<hr />

## The State *vs.* J. Edward Lee.

Third Judicial District, Bridgeport, October Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Section 1637 of the General Statutes which allows an appeal in criminal cases to be taken by the State, with the permission of the presiding judge, from the rulings and decisions of the Superior Court, authorizes an appeal by the State, in the nature of a motion for a new trial after a verdict of acquittal. The proper practice on such appeal is to ask and secure the permission of the presiding judge, and a formal record thereof should be made at the time of the judgment; and the accused, if in custody, should then be admitted to bail.

Such statute regulates the procedure by which the final determination of the questions involved in one prosecution may be reached in accordance with law; and is in full accord with the principle of the finality of judicial proceedings on which is based the common law maxim that no person shall twice be put in jeopardy for the same offense.

Upon a trial for causing the death of a woman by a wound in the uterus resulting from the use of some instrument in operating for an abortion, the accused claimed, as the principal hypothesis consistent with his innocence, and offered evidence tending to prove, that the wound

was inflicted by the deceased herself. In rebuttal the State inquired of a medical and surgical expert who had performed an autopsy on the body of the deceased, examined the uterus, and described its condition to the jury, whether in his opinion, from his examination of the body and uterus, the wound so described was self-inflicted. *Held* that the inquiry was proper and material, and its exclusion by the trial court an error which entitled the State to a new trial.

[Argued October 23d—decided December 1st, 1894.]

INDICTMENT for murder in the second degree, tried to the jury in the Superior Court for New Haven County before *Robinson, J.;* verdict and judgment of not guilty, and appeal by the State for alleged errors in the rulings and charge of the court. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*Levi N. Blydenburgh,* for the appellant (the State).

I. It is important in the interests of public justice that, if by errors arising upon the trial an improper verdict was secured, the case should be again heard, that in the new trial the errors before made, may be corrected. It was equally important that the State should secure a proper verdict, as it is that all the rights of the accused should be protected and errors made to his disadvantage be remedied.

The charge is murder in the second degree, and the accused was guilty if he was instrumental in procuring the abortion which caused death, or if he aided and abetted therein.

The defense was permitted to cross-examine as to previous abortions and miscarriages, which, if belonging in the case at all, was a part of the defense, and not legitimate cross-examination. *Hopkinson* v. *Leeds,* 78 Penn. St., 396; *Griffith* v. *Diffenderfer,* 7 Reporter, 527; *Stanton County* v. *Canfield,* 10 Neb., 527, 289; *State* v. *Green,* 35 Conn., 208.

II. Dr. Moses C. White was the expert who made the post-mortem. He was called by the State as an expert witness who had examined, and had in his possession up to that time, the uterus of this woman. The defense, in its testimony, had sought to raise the suspicion of self-infliction of the wounds, and *in reply to that,* Doctors Bacon, Welch and Fleischner, together with Dr. White, who had also exam-

ined the uterus, were called to explain the condition of the
same, its laceration and punctures, to describe the position
of the womb in the body, and in conclusion, the State desired
that the jury should have the benefit of Dr. White's opinion
as to this self-infliction, and so asked the question. It was
clearly the opinion of an expert in regard to an issue raised
by the defense, and was clearly admissible.

*Jacob P. Goodhart* and *Arthur C. Graves*, for the appellee
(accused).

I. In order to clearly understand the question of the
State's right to appeal in this case to this court, it is neces-
sary to refer briefly to the right of a State to appeal in a
criminal case under the common law. This question involves
a principle so universally admitted that it hardly seems
necessary to state it. The common law directs that in crim-
inal cases after the accused is acquitted, either on a ruling
by the judge in a question of law, or in matters of fact by a
jury, the defendant shall not be subject to a second trial for
the same offense at the instance of the public prosecutor.
4 Bla. Com., p. 335; 1 Chit. Crim. Law, 657; *State* v. *Ben-
ham*, 7 Conn., 414; *State* v. *Garvey*, 42 id., 232; *State* v.
*Brown*, 16 id., 54; *People* v. *Comstock*, 8 Wend., 549; *People*
v. *Cornung*, 2 Comstock, 9; *People* v. *Fairman*, 59 Mich., 568;
*State* v. *Reynolds*, 4 Hayw. (Tenn.), 110; *State* v. *Shields*,
49 Md., 301. The common law principle denying the right
of the State to appeal in criminal cases covers a much broader
ground than is generally supposed, and broader than that
clause of the Fifth Amendment of the United States Consti-
tution, which provides that no " person shall be subject for
the same offense to be twice put in jeopardy of life or limb."
According to the decisions of most States, courts have denied
the right of the State to appeal in any criminal case what-
ever, even where the defendant is discharged by a decision
on a demurrer, motion to quash, special verdict, or motion
in arrest of judgment, and in some extreme cases even after
a verdict against evidence and after a misdirection of the
judge. *Commonwealth* v. *Cummings*, 3 Cush., 212; *Common-*

*wealth* v. *Harrison*, 2 Va. Cases, 202; *State* v. *Jones*, 7 Ga., 422; *United States* v. *Sanges*, 144 U. S., 310, where this principle is discussed and cases cited; 1 Chit. Crim. Law, 657.

This provision was the inflexible and universally admitted rule of law in England, and barely a single exception is to be found in all the adjudicated cases. Now this law, as indeed all common law, became incorporated into our jurisprudence. We received it from the mother country at the time when this State was a colony, and received its charter from Charles II. To these principles exceptions only obtain in a few later States, where, by a long line of judicial decisions, a different doctrine has been established. In this State the courts have never entertained a different doctrine. *State* v. *Benham*, 7 Conn., 414; *State* v. *Brown*, 16 id., 56.

II. It is by this all-pervading principle of the common law that the American as well as the English citizen is protected, and in no criminal case has the State a right to appeal unless that right is expressly given by statute. The statute in this State under which the appellant claims is § 1637 of Gen. Stat. 1888, which reads as follows: "Appeals from the rulings and decisions of the Superior Court in any county * * * upon all questions of law arising on the trial of criminal cases, may be taken by the State, with the permission of the presiding judge, to the Supreme Court of Errors in the same manner, and to the same effect as if made by the accused." Admitting in our argument for the present that the provision of the Fifth Amendment of the Federal Constitution does not affect the question as presented here, we rest our case on the construction of this statute. This statute is, we have seen, in derogation of a common right. It must, upon legal principles, therefore, be strictly construed. 1 Kent's Comm., 463; *State* v. *Bartlett*, 9 Ind., 569; *State* v. *Clarkson*, 59 Mo., 149; *Brown* v. *Barry*, 3 Dall., 365; *McCool* v. *Smith*, 1 Black., 459; *State* v. *Norton*, 23 N. J. L., 39; *Hollman* v. *Bennett*, 44 Miss., 322; *St. Louis D. I. Co.* v. *Nelson Lumber Co.*, 29 N. W., 976 (Minnesota, 1893).

We submit that in construing this statute the courts of this State are bound to presume that the common law right of this defendant is not intended to be modified further than is expressly declared. The statute does not give the State in any case a new trial. This court, we submit, has no power to grant a new trial in this case. By the very terms of the statute it can only pass upon rulings and decisions of law on an appeal from the Superior Court. Had the legislature intended to grant a new trial to the State, it would have given this power by express terms. This statute evidently gives the right of appeal only after decisions upon demurrers, motion to quash the indictment, and any interlocutory motions. *Maryland* v. *Shields*, 49 Md., 301, is directly to the point. *State* v. *Powell*, 64 N. C., 640; *State* v. *Johnson*, 2 Iowa, 549.

III. The Fourteenth Amendment of the Federal Constitution and § 9, Art. 1, of our State Constitution provide that no one shall be deprived of life, liberty or property without "due process of law." Now due process of law undoubtedly means "by the law of the land" in the sense in which those words are used in Magna Charter. *Murray's Lessee* v. *Hoboken Land and Improvement Co.*, 18 How., 276. Now in this connection, in cases of crimes and felonies, a person cannot be arrested and imprisoned for the felony unless he has been indicted by a grand jury. Indictment by a grand jury is what is necessary to constitute "due process of law" in this instance. The proceedings of law under which the defendant was arrested in the first instance have been exhausted, the prisoner acquitted and discharged. Now can he be deprived of liberty again without information of the grand jury? We submit that on these principles he cannot be and, furthermore, the Superior Court would have no jurisdiction over him, and an appeal by the State would therefore be useless. To avoid this difficulty it would be necessary for the statutes to provide for retaining the prisoner in custody pending an appeal to the Supreme Court, in which case an appeal by the State might be of some effect.

In construing this statute our attention is called to *State*

v. *Clerkin*, 59 Conn., 98. In this case the court decided
but one point, and that was that a demurrer to the indict-
ment might be reviewed under § 1637. The question as
here presented, whether on an appeal by the State this court
can grant a new trial, was not argued or considered in any
way by the court. In determining this question all pre-
sumptions are to be made in favor of the defendant, and the
Act (which is a criminal statute) construed most favor-
ably to him. *Brooks* v. *People*, 24 Pac. Rep., 553, (Colo-
rado, 1890).

IV. It is a well settled rule that the court has a discre-
tionary power as to the scope of cross-examination, and how
far to permit the examination to extend to matters not
strictly germane to the direct examination, and no error
can be complained of in exercising such discretion. *Chap-
man* v. *Loomis*, 36 Conn., 459; *People* v. *Brown*, 72 N. Y.,
571; *Ryan* v. *People*, 79 id., 594; *People* v. *Crapo*, 76 id.,
290. The time and order of admitting evidence in the
trial of a cause are subject to the discretion of the court.
*Doane* v. *Cummings*, 11 Conn., 152; *State* v. *Alvord*, 31 id.,
40; *Commonwealth* v. *Eastman*, 1 Cush., 217; *Bryan* v.
*Branford*, 50 Conn., 246.

V. The court rightfully excluded this question put by
the State to Dr. White in rebuttal: "Now, I wish to ask
you whether, from your examination of the body and uterus,
in your opinion the wound which you have described upon
the wall of the uterus was self-inflicted?"

As to whether the wound was self-inflicted was a matter
of fact and could not be passed upon by the witness. It
was within the province of the jury to say whether the
wound was self-inflicted. The witness was put on as an
expert witness, and his want of knowledge of all the circum-
stances of the case made him incompetent to answer as to
facts in this particular case. The fact that he made the
post mortem examination rendered him competent only to
answer whether in this case the wound could have been
self-inflicted, provided this last was material to the issue.
To have admitted the question would have been all out of

the regular procedure, and could have been excepted to by the defendant.

HAMERSLEY, J.   The defendant was indicted for the crime of murder in the second degree, was acquitted upon trial to the jury, and this is an appeal by the State, in the nature of a motion for a new trial, on the ground of alleged errors in the charge of the court and in the admission and exclusion of evidence.

·The defendant makes a preliminary claim that the State has, under our law, no right of appeal to this court when the accused has been acquitted by a jury, and bases his claim upon two propositions: 1. A law authorizing procedure for the correction of errors in instructions to the jury, or in the admission and exclusion of evidence made by the court in a criminal trial, and followed by an acquittal of the accused, is in violation of the fundamental principle of the common law which declares that " no person shall be subject for the same offense to be twice put in jeopardy ; " 2. Section 1637 of the General Statutes does not in express terms authorize an appeal when the accused has been tried and acquitted by the jury.

*First :* " That no one shall be put in jeopardy twice for the same offense, is a universal maxim thought worthy to be incorporated, to a certain extent, into the Constitution of the United States ; and that an acquittal or conviction by a court having jurisdiction, on a sufficient indictment or information, is in all cases whatsoever a bar, is equally clear." *State* v. *Benham,* 7 Conn., 418.   This maxim is based upon a principle common to all systems of jurisprudence, *i. e.,* the finality of judicial proceedings.   Broom's Legal Maxims, p. 312.   If questions once tried and determined could be again agitated at the option of the parties, one main object of any administration of justice would be defeated.   The function of courts is to settle controversies according to law.   The object of settlement is secured by the principle of finality of judgments.   *Finis finem litibus imponit.*   The object of settlement in accordance with law

the same in all cases, is secured by the correction of errors
in the application of law in each case. Neither object is
inconsistent with the other. The end is not reached, the
cause is not finished, until both the facts and the law appli-
cable to the facts are finally determined. The principle of
finality is essential; but not more essential than the princi-
ple of justice. A final settlement is not more vital than a
right settlement. The adjustment of these principles in
the establishment of procedure by means of which the final
judgment shall not only settle the controversy but settle it
in accordance with law, is determined in each jurisdiction
by considerations of public policy and not by fundamental
principles of jurisprudence. The principle *nemo bis vexare*
*pro eadem causa*, gives protection against a second judicial
proceeding, and in the event of such proceeding gives to a
party the right, in criminal cases, to the plea of *autrefois*
*acquit* or *autrefois convict*, and in civil cases to the plea of
*res judicata;* but the principle does not control the ques-
tion whether the judgment pleaded in bar is in fact a legal
and final judgment, and has no legitimate relation to the
question whether existing procedure provides for correction
of errors occurring in the trial.

This distinction has been lost sight of in some cases which
discuss the application of common law rules, or statutory
provisions, to the correction of errors in criminal causes;
and owing to the confusion of principle with practice, a
theory seems to have at times prevailed which assumes that
the punishment of crime is a sort of invasion of natural
right, and that a person accused of crime should be exempt
from established rules of law binding on all other citizens ;
and therefore a procedure which proves incompetent to the
correct application of legal principles in criminal trials can
be changed like any other rule of practice when the change
may tend to protect an accused from unjust punishment,
but becomes a fundamental principle of jurisprudence that
cannot be altered when the change may tend to secure his
just punishment. It needs no argument to dispel such an
illusion, or to demonstrate that the natural rights of the

individual as well as the interests of public order are best served, and the essential principles of jurisprudence are most accurately followed, when the proceedings in a criminal prosecution include such protection against injustice that the final disposition of the cause will not only settle the controversy, but settle it in accordance with law.

Judicious legislation for securing a full, fair and legal trial of each criminal cause, is not in derogation, but in protection, of individual right, and is in full accord with the principle that no man shall twice be put in jeopardy for the same offense.

That maxim, as we have seen, is based on the truth that a judicial proceeding lawfully carried on to its conclusion by a final judgment puts the seal of finality on the controversies determined by that judgment, and is not based on a theory that a person accused of crime has any natural right of exemption from those regulations of a judicial proceeding which the State deems necessary to make sure that the conduct and final result of that proceeding shall be in accordance with law. And so the putting in jeopardy means a jeopardy which is real and has continued through every stage of one prosecution, as fixed by existing laws relating to procedure ; while such prosecution remains undetermined the one jeopardy has not been exhausted. The jeopardy is not exhausted by an indictment followed by a *nolle*, nor in this State by a *nolle* after the trial has commenced when the prisoner does not claim a verdict, 2 Swift's Digest, 402, *State* v. *Garvey*, 42 Conn., 233; nor by the discharge of a jury in case of the sickness of a judge, *Nugent* v. *The State*, 4 Stew. & Port., 72; the sickness of a juror, *Rex* v. *Scalbert*, 2 Leach, 620, *Rex* v. *Edwards*, 3 Camp., 207, *Com.* v. *Merrill*, Thacher's Crim. C. 1 ; the sickness of the prisoner, *Rex* v. *Stevenson*, 2 Leach, 546, *Rex* v. *Streek*, 2 Car. & P., 413, *State* v. *McKee*, 1 Bailey, 651 ; nor in case of the expiration of the term of court during the progress of the trial, *Regina* v. *Newton*, 3 Cox C. C., 489, *State* v. *M'Lemore*, 2 Hill (S. C.), 680; nor in case of the inability of the jury to agree, *State* v. *Woodruff*, 2 Day, 504, *Regina* v.

*Charlesworth,* 1 Best & S., 460, *Regina* v. *Davison,* 2 Fos. & Fin., 252, *People* v. *Olcott,* 2 Johns. Cas., 301, *Com.* v. *Bowden,* 9 Mass., 494, *Hoffman* v. *The State,* 20 Md. 425, *Hurley* v. *The State,* 6 Ohio, 399, *U. S.* v. *Perez,* 9 Wheat., 579; nor in case of influence exerted on the jury against the prosecution by an officer in charge of the jury, *State* v. *Wiseman,* 68 N. C., 203; nor in case of misconduct or incapacity of a juror, *U. S.* v. *Morris,* 1 Curtis C. C., 23, *People* v. *Damon,* 13 Wend. 351, *Stone* v. *People,* 2 Scam., 326, *Dilworth* v. *Com.,* 12 Gratt., 689, *Regina* v. *Ward,* 10 Cox C. C., 573; even after the case has been committed to the jury, *State* v. *Tuller,* 34 Conn., 294; nor when the prisoner offers to waive the disqualification of a juror who has expressed an opinion against him, and protests against the discharge of the jury, *State* v. *Allen,* 46 Conn., 531; nor is it exhausted by an acquittal when the verdict has been obtained through the fraud of the accused, 1 Chitty Cr. Law, p. 657, *State* v. *Reed,* 26 Conn., 208.

The great significance of these cases lies in their illustration of the inherent power and duty of the court to see that the trial is conducted according to law, even if the impaneling of new juries and new trials are involved. The same underlying principle of justice which demands a retrial because a juror is legally disqualified, calls for a re-trial. when illegal evidence has been admitted, or legal evidence excluded; in either case the trial is tainted and should not support a valid final judgment. Before the verdict is returned the trial court of its own motion can award a re-trial; after the verdict is returned, a re-trial is awarded only on further proceedings in the cause, which may or may not be authorized by the law regulating procedure. If such further proceedings are not authorized by law, the cause is ended, and the one jeopardy of the accused is exhausted; but this results *not* from any special sanctity attributable to a verdict tainted with illegality, but solely to the fact that the State, influenced by considerations of public policy, has decided to make such verdict, whether just or unjust, the end of that controversy. But when the State sees fit to pro-

vide that the cause shall not necessarily be so ended, but that further proceedings on motion of the accused may be had, an unjust verdict resumes its normal position. of a legal nullity ; and when the State provides for like proceedings on the motion of the prosecutor, a similar result must follow.

The rule as formulated by this court in *State* v. *Garvey*, *supra*, rests upon solid foundations : "The principle which protects an individual from the jeopardy involved in a second trial for the same offense is well established and fully recognized. The question however as to what constitutes a trial depends upon the course of procedure of the particular jurisdiction in which it is had, and the construction of the courts there with respect to it."

The power and duty of the State to extend to criminal trials those methods of procedure which are found essential to that pure and impartial administration of justice,—to which every one both as an individual and as a member of the body politic, when the State itself appears as a party to the trial, is entitled by virtue of a principle which lies at the root of our jurisprudence,—would never have been questioned were it not that the *dicta* of judges as to matters of practice became confused with statements of the legal principle that insists on the conclusiveness of a valid and final judgment.

The rule that a criminal cause once submitted to a jury cannot be submitted to another jury may be traced to a *dictum* of Coke ; an able and interesting discussion of its authority will be found in an opinion of Judge KENT, given in full in a note to *State* v. *Woodruff*, 2 Day, 507. That *dictum* was at most a statement of existing procedure, and as such has been repeatedly discredited in a large number of cases ; and a rule of procedure in criminal law advanced during the seventeenth century cannot be held to dominate the settled principles of jurisprudence in the nineteenth. The administration of criminal law, as it formerly prevailed in England, has justly been regarded, in some respects, as an object lesson of barbaric codes. Its continuance, theoretically unchanged during the wonderful evolution of a

system of civil liberty and sound jurisprudence, is a mar-
vel; not inexplicable perhaps, but none the less strange.
Judges were compelled to administer a criminal code in
many ways sharply antagonistic to the system of civil lib-
erty and justice which legislature and courts were slowly
developing.   It is not surprising that under such limita-
tions they should have been acute in stretching the technics
to modify the harshness of the law, and should have occa-
sionally given utterance to *dicta*, praiseworthy in view of
existing conditions, but unsound when applied to conditions
such as now happily prevail.   General rules enunciated un-
der such circumstances and based on such *dicta*, are not au-
thority for the fundamental principles of the common law
of this State.   At most they are general statements touch-
ing procedure, which must yield to the necessities of justice.
The uncertainty of such rules was felt, and the principle to
be followed in applying them was clearly stated by SIR
MICHAEL FOSTER as early as 1746:  "Upon the whole my
opinion is that all general rules touching the administration
of justice must be so understood as to be made consistent
with the fundamental principles of justice; and conse-
quently all cases where a strict adherence would clash with
those fundamental principles are to be considered as so many
exceptions to it."   *Kinloch's Case*, Foster Cr. Law, 16.

The defendant lays great stress upon the claim that at
English common law the procedure did not permit a writ of
error after acquittal.   We incline to think that it cannot be
fairly assumed from a comparison of all the early authorities
that such writ of error was forbidden.   A difficulty in reach-
ing a certain conclusion arises from the fact that originally
a writ of error in criminal causes was a writ of grace and
not of right, and that bills of exceptions were not allowed
in criminal trials; so that neither the prosecutor nor the
accused could place on record the grounds on which a writ
of error would ordinarily be sought.   But the common prac-
tice of reserving questions of law arising in the trial of a
cause for the advice of the Court of King's Bench, demon-
strates the recognition of the principle that the final judgment

in a criminal cause should not be rendered until opportunity has been given for the correction of errors which, if not corrected, would make that judgment unjust.    To what extent such corrections should be allowed, and whether they shall be accomplished by reservation before judgment, or by proceeding in error after judgment, is a matter of practice to be settled on considerations of public policy.

The United States Supreme Court, in an opinion delivered by Justice GRAY, has collated the authorities, English and American, on the common law practice, and reached conclusions which will doubtless be generally accepted, *i. e.*, the right of the crown at common law to a writ of error, after acquittal, is not wholly free from doubt; the practice in a few of our States recognizes the right of the prosecutor to proceedings in error; in a great majority of the States the courts hold " that the State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment is rendered upon a verdict of acquittal, or upon the determination by the court of a question of law."    *U. S.* v. *Sanges*, 144 U. S., 310.

It is however immaterial to the defendant what the practice at common law may have been.    The gist of his contention is that, assuming the practice to have been as he claims, such failure of the ancient common law procedure to provide for the correction of errors in a criminal trial, was based on a settled and universal principle of jurisprudence incorporated into our own common law, and binding upon our courts, if not upon our legislature.    For reasons already stated we deem such contention to be utterly unsound.    Regulations for enforcing the correct application of law in all criminal trials are essential to the administration of justice, and a statute prescribing procedure for that purpose and requiring the verdict of the jury to be reached in accordance with the settled principles of law and justice before it can support a valid judgment, is not in derogation of any fundamental doctrine of our common law, nor inconsistent with the principle

that enforces the conclusiveness of a valid and final judgment.

In this State there was at common law no practice authorizing a motion for new trial after acquittal. *State* v. *Brown*, 16 Conn., 54. There was no practice authorizing such motion after the verdict of a jury in any case, civil or criminal. Statutes enacted in 1702 and 1762 were construed as preventing courts from setting aside, on motion, any verdict either as against law or evidence. In 1807, acting under authority of a statute authorizing the establishment of rules of practice, this construction was modified and provision made for granting new trials, on motion, for errors in law, (3 Day, 28, 29,) and in 1816 this court substantially overruled the old construction, and held that the Superior Court might grant motions for new trial and reserve the questions raised by such motions for advice of this court. *Bartholomew* v. *Clark*, 1 Conn., 472. This decision was confirmed and its effect somewhat modified by the Revision of 1821, p. 54. Such motion and review, however, was not a matter of right. In 1830 the right to a motion for a new trial, reviewable by this court, was given by statute to parties in all civil actions aggrieved by the decisions of the court on questions of law arising in the trial. Public Acts, 1822–1835, 288; and the same year another statute authorized a motion for new trial by the defendant in criminal causes, in the same manner as in civil actions. Public Acts, 1822–1835, 283. And in 1886 the legislature wisely extended this authority, with the permission of the trial judge, to the State.

*Second :* The defendant urges that the Act of 1886, incorporated into the General Statutes as § 1637, only authorizes an appeal by the State after judgment by the court, without the intervention of a jury, and does not authorize an appeal in the nature of a motion for a new trial after acquittal.

There is no ground for such a construction. The language of the statute is as explicit as its meaning is plain. In the Revision of 1875 the title relating to civil actions provided that "upon the trial of all matters of fact * * *

whether to court or jury, if either party shall think himself aggrieved by the decision of the court upon any question of law arising in such trial" he may make a motion for a new trial, stating therein the questions of law so decided, and the court shall grant a rule to show cause, and reserve said motion and rule for the advice of the Supreme Court of Errors (p. 448). The title relating to crimes and criminal prosecutions provided that " any defendant in a criminal prosecution, aggrieved by any decision of the Superior Court upon the trial thereof, * * * may be relieved by motion for new trial * * * in the same manner and with the same effect as in civil actions " (p. 539). The Act of 1882 provided that " all questions of law arising on the trial of any cause * * * which may now by law be carried to * * * the Supreme Court of Errors for revision by motion for a new trial * * * shall hereafter be removed to such higher court by an appeal from the judgment of the court * * * and no motions for a new trial shall hereafter be allowed." Public Acts, 1882, p. 144. The Act of 1886 provided that "appeals from the rulings and decisions of the Superior Court upon all questions of law arising on the trial of criminal causes may be taken by the State, with the permission of the presiding judge, to the Supreme Court of Errors, in the same manner and to the same effect as if made by the accused." Public Acts, 1886, p. 560. These several provisions of law were incorporated without substantial change in the General Statutes of 1888, and in express terms provide for a new trial upon motion of the State, as well as upon motion of the accused. *State* v. *Clerkin,* 58 Conn., 98. The preliminary claim of the defendant cannot be sustained, and the appeal is properly before us.

The fifth assignment of error is as follows: " The court erred in excluding the following question asked by Mr. Doolittle of the same witness (Moses C. White) : ' You examined the uterus in this case under the condition you testified to. You made the post-mortem and examined the uterus in this case ; and have described its condition. Now I wish to ask you whether from your examination of the body and the

uterus, in your opinion the wounds which you have described upon the wall of the uterus were self-inflicted." '

The finding details in full the facts in the case claimed to have been proved by the State and by the defense. The victim of the crime charged was a woman, whose death was caused by a lacerated wound in the uterus, made by some instrument used in the production of an abortion shortly prior to her death. The defendant was a practicing physician whom the deceased consulted for the first time when she decided on suffering an abortion. The testimony introduced in chief by the State was sufficient to justify the jury, if they believed the witnesses, in drawing an inference of the defendant's guilt. The testimony introduced by the defendant consisted mainly in contradictions of the State's witnesses; the most important contradiction being that of the accused himself, who denied having performed any operation upon the deceased, and stated that in attending the deceased during her last illness caused by the abortion and superintending her delivery of a dead fœtus and after-birth, he acted only as an honest medical practitioner would act when called to attend a woman suffering from such injuries. He said the injuries were inflicted by the deceased herself, and offered testimony claimed as tending to show that she was familiar with the mode of producing abortion by mechanical means, and also testimony that the deceased stated she had inflicted the injury herself and had made this statement subsequent to her dying declaration testified to by the State's witnesses in which she charged the defendant with having produced the abortion. Upon rebuttal the State called the witness Moses C. White, a practicing physician and medical examiner for the county, who had, as such public officer, performed an autopsy on the body of the deceased. Dr. White had been previously examined by the State and cross-examined by the defense, as a medical expert. It is patent that under these circumstances the opinion of Dr. White as a medical and surgical expert, upon the question whether the wound he had examined and described to the jury was so situated and of such a nature as to render its self-infliction

impracticable, was admissible evidence. It is true that a wound may be so situated that the practicability of self-infliction is an inference which all men are competent to draw, requiring no peculiar knowledge or experience, and therefore not a proper subject of expert testimony. But to draw such an inference from this particular wound on the interior surface of the womb of the deceased, plainly required peculiar knowledge and experience not common to the world, and therefore the opinion of an expert founded on such knowledge and experience is admissible. *Taylor* v. *Town of Monroe*, 43 Conn., 44; Wharton's Criminal Ev., p. 403. The importance of the excluded testimony is no less clear. The testimony in the case, as appears from the record, was of such a nature that the question of the defendant's guilt might have wholly turned on the disputed fact of self-infliction of the wound. The defendant himself relied on the possibility of that fact existing as a principal hypothesis consistent with the evidence and his own innocence. The evidence excluded was relevant to that fact; justice required the admission of the evidence ; what weight might have been given to it cannot be known, but it well may be that the opinion of Dr. White would have convinced the jury that the wound was not self-inflicted, and that there remained no reasonable hypothesis consistent with the evidence and the innocence of the prisoner. The exclusion of legal evidence which the court can see might, if admitted, have justly changed the result, is an error which destroys the judicial value of the verdict, and demands a new trial.

It is not necessary to comment in detail upon the other errors assigned. Whether such as are well taken might, if standing by themselves, furnish sufficient ground for a new trial in this case, is immaterial ; there is no need for strengthening the conclusion that the course of trial and verdict of the jury was not in accordance with law.

The record in this case is faulty in some respects, to which attention should be called.

The appeal contains four or five pages of printed matter called " State's claim as to errors in the charge of the court,

and exceptions thereto," consisting mainly of argumentative comments on the charge of the court. This is not that distinct statement of the special errors complained of which the statute requires. A similar fault appears in the appeal in *State* v. *Smith*, tried at this term; and a much more flagrant instance occurred at a recent term. Such practice cannot be permitted.

The permission of the presiding judge allowing the State to take this appeal, does not appear in the record. It did not appear in the record in *State* v. *Clerkin*, *supra*; although in that case the fact that the permission was granted at the time of the judgment appealed from, was known to this court. We think the authority of *Reboul* v. *Chalker*, 27 Conn., 128, requires us to treat the finding of facts by the presiding judge, for the purpose of appeal, as sufficient evidence that the necessary permission was granted; but we do not think the formal permission is properly omitted from the record. Without passing on questions suggested in argument, but which cannot be decided on this appeal, we think as a matter of practice certainly, that in all appeals under § 1637, the permission of the presiding judge should be asked and granted, and a formal record thereof made at the time of the judgment; and that the accused, if in custody, should then be admitted to bail.

There is error in the judgment of the Superior Court, and a new trial is granted.

In this opinion the other judges concurred.