COMMONWEALTH *vs.* GEORGE DEWHIRST.

Essex. November 8, 1905. — February 26, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*False Entries. Pleading, Criminal. Evidence,* Admissions and confessions.

An indictment of the clerk of a corporation under R. L. c. 208, § 58, for making false entries in a book of the corporation with intent to defraud, is sufficient if it charges the commission of the crime in the language of that section, without alleging in language taken from § 59 of the same chapter that the defendant "had access or right of access" to the book in which the entries were made, that being no part of the offence described in the preceding section.

At the trial of a clerk of a corporation, who also was its general manager, on an indictment under R. L. c. 208, § 58, for making false entries in books of the corporation with intent to defraud, it having appeared that there was a deficiency in the cash of the corporation, which the defendant has testified was caused by paying dividends that had not been earned, the government may show, as evidence of an admission by silence on the part of the defendant, that the president of the corporation said in the defendant's hearing that the defendant had made wrong entries for the purpose of covering up the deficiency, and that the witness

asked the president whether the counsel of the corporation was "fully informed" and the president replied "I don't think he is," and that the defendant who was present said nothing although he previously had taken part in the conversation.

At the trial of a clerk of a corporation, who also was its general manager, on an indictment under R. L. c. 208, § 58, for making false entries in books of the corporation with intent to defraud, it is right to refuse a request of the defendant to rule "that entries made for the purpose of making a showing at the end of the quarter to induce the declaring of dividends would not be entries with intent to defraud within the meaning of the statute," as such a dividend not earned would in itself be a fraud.

If accounts of a corporation are kept on the stubs of check books given to it by banks, false entries of deposits made on these stubs by a clerk of the corporation with intent to defraud are entries on books of the corporation within the meaning of R. L. c. 208, § 58.

INDICTMENT, with thirty-eight counts, found and returned in the Superior Court for the county of Essex in May, 1904, charging the defendant, a clerk and servant of the Arlington Co-operative Association, with making false entries in violation of R. L. c. 208, § 58.

At the trial in the Superior Court before *Stevens,* J. the defendant moved to quash the indictment " because said indictment does not completely and fully, substantially and formally set forth any offence known to the law, in that in none of said counts is it alleged that the defendant was charged with any duty in reference to the books of the corporation named in said indictment, or had access or right of access to said books." In several of the counts the indictment followed the language of the statute. The judge denied the motion, and the defendant excepted.

It appeared that the Arlington Co-operative Association was a corporation organized under R. L. c. 110, § 7, and carried on a retail business in groceries, wood and coal, dry goods and boots and-shoes in Lawrence, having several branch stores situated in different parts of that city, that the business was a cash business, the profits of which were intended to be distributed to its shareholders in quarterly dividends, and that the defendant besides being the clerk of the corporation was also its general manager.

Witnesses called by the Commonwealth testified without objection to certain statements made by the defendant at a meeting of the directors on October 26, which are referred to in

the opinion, to the effect that the shortage which appeared in the cash was caused by paying dividends that had not been earned, and that the dividends had been declared to save the honor of the association. The witnesses then were asked as to statements made by the president of the corporation at that meeting in the presence of the defendant, to which the defendant made no reply, although previously he had taken part in the conversation. The counsel for the defendant stated that, while he would make no objection to any statements made by the defendant, he objected to evidence of statements made by the president or any third party to which the defendant made no reply. The judge admitted the statements made in the presence of the defendant which are quoted in the opinion, and the defendant excepted.

The defendant asked the judge to rule:

1. That entries made for the purpose of making a showing at the end of the quarter to induce the declaring of dividends would not be entries with intent to defraud within the meaning of the statute.

2. That the check books issued by the New England Trust Company and the Merchants National Bank, on which were kept the memoranda of deposits and withdrawals from the banks, were not books of entry of the corporation within the meaning of the statute.

The judge refused to make these rulings and the defendant excepted. One count was *nol. prossed.* The jury returned a verdict of not guilty on nine counts, and of guilty on all the remaining counts. The defendant alleged exceptions.

*J. P. Sweeney,* for the defendant.

*W. S. Peters,* District Attorney, for the Commonwealth.

LORING, J. 1. The motion to quash was rightly overruled. The objection specifically assigned is that " in none of said counts is it alleged that the defendant was charged with any duty in reference to the books of the corporation named in said indictment, or had access or right of access to said books." This case comes within the general principle that it is enough if the crime be charged in the language of the act creating it. *Commonwealth* v. *Ashton*, 125 Mass. 384. *Commonwealth* v. *Prescott*, 151 Mass. 60. *Commonwealth* v. *Dill*, 160 Mass. 536.

*Commonwealth* v. *Hodgkins*, 170 Mass. 197. *Commonwealth* v. *Danziger*, 176 Mass. 290. In ascertaining the crime created by R. L. c. 208, § 58, the section in question, § 59, is not to be read into it as the defendant has contended.

2. The exception to the admission of what was said by others in the defendant's hearing was not well taken. It was admitted on the ground that the defendant, by remaining silent, admitted that what was stated was true; as to which see *Commonwealth* v. *McCabe*, 163 Mass. 98; *Commonwealth* v. *Funai*, 146 Mass. 570; *Commonwealth* v. *Brailey*, 134 Mass. 527; *Commonwealth* v. *Brown*, 121 Mass. 69. The principle is admitted by the defendant, but what he complains of here is its application. The facts were as follows: Since its organization in 1884, the defendant was and had been the corporation clerk and general manager of a co-operative association organized under R. L. c. 110. Since its organization the association had declared quarterly dividends until October, 1903. At a meeting of the directors on October 26, 1903, it appeared that while the report of the defendant as general manager for the preceding quarter showed an apparent profit that would justify the payment of a dividend, there was not sufficient cash to pay it. An examination of the books of the corporation by experts showed a shortage of cash. The examination also disclosed entries in the handwriting of the defendant, some in pencil and some in ink, some on the stubs of the check books "issued" by two banks, and some on the journal of the corporation purporting to show deposits, at certain periods, of moneys in said banks which had not been actually made therein, and also of balances in said banks at certain periods which were incorrect, and these entries were the subject of the indictment. There was also evidence tending to show that these entries were made to force cash balances at the time of the quarterly dividends. After the Commonwealth had introduced in evidence without objection certain statements made by the defendant at the directors' meeting of October 26, to the effect that the shortage was caused by paying dividends that had not been earned, and that the dividends had been declared to save the "honor" of the association, a witness was allowed to testify, against the objection of the defendant, that later the president of the association said in the defendant's hearing that the de-

fendant had " made wrong entries to cover the deficiency up, for
the purpose of covering the deficiency up," and that the witness
asked the president whether the counsel of the association, who
had come to the meeting to give advice, was " fully informed " ;
and that the president said, " I don't think he is." It was to
these statements made in the defendant's presence without being
contradicted by him that the defendant took an exception. The
evidence was admissible.

3. The first ruling asked for was properly refused. The de-
fendant's argument in support of his exception to the refusal to
give this ruling is that the assets belonged to the shareholders,
and if the shareholders received dividends that they did not earn
they had not thereby lost anything. The difficulty with the de-
fendant's contention is that such a dividend is a fraud in itself.
It is not true, as the defendant assumes in his contention, that
the only effect of such a dividend must be to transfer to
the pockets of the shareholders money which of necessity
belonged either to the association or to them. If the associa-
tion was made insolvent by these dividends, the money divided
did not belong to the shareholders but to the creditors of the
association. Even if it was solvent, these entries may have
been made to induce sales of merchandise to the association on a
credit to which it was not entitled, or the sale by shareholders
of shares for more than their real value, or to induce the asso-
ciation to continue in business or to continue to employ the
defendant, which it would not have done had the facts been
known. Any one of these would be fraudulent. The ruling
was rightly refused.

4. There is nothing in the defendant's argument that because
the check books (on the stubs of which false entries of deposit
were made) were " issued " by the banks they were not books of
entry of the association within the meaning of R. L. c. 208,
§ 58. These check books became books of the association
within the meaning of the act, by the accounts of the associa-
tion being kept in them by the officers and clerks of the asso-
ciation. Whether the books were given to the association or
bought by it was of no consequence.

*Exceptions overruled.*