THE STATE OF CONNECTICUT *vs.* ISADORE YOCHELMAN.

Third Judicial District, Bridgeport, October Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Statements relevant and material to the issue, made in the hearing of an accused when he was not in the custody of the law, to which he made no reply, are admissible in evidence when it is clear that he knew and appreciated their significance, the facts were known to him, and he had the opportunity to speak without restraint under circumstances which naturally called for a reply.

The State *v.* Yochelman.

In the present case, a police officer read aloud in the presence and hearing of the accused, who had not then been taken into custody or charged with any crime, a written statement prepared from information furnished by a girl discovered lying in great pain upon a cot in his apartments, and although the statement detailed the efforts of the accused to perform an abortion upon the girl, and although she then affirmed the truth of its contents and affixed her signature to it, he made no denial or explanation either during the reading or the subsequent preparations to remove the girl in an ambulance. *Held* that in a prosecution for manslaughter, alleged to have resulted from the abortion, the statement as read to the accused was admissible in evidence against him; and that although a caption or heading upon the statement, dictated not by the girl but added by the police officer and not read in the presence of the accused, was improperly admitted as a part of the writing, the error was harmless, since the caption contained no information beyond that included in the body of the statement.

The day following the removal of the girl to the hospital a police officer took from her another written and signed statement of the circumstances attending the attempted abortion, but she, at that time, expressed the belief that she would live. Three days later, when she had given up hope of recovery, this statement was again read to her and she affirmed its truth, again signing it with these words appearing over her signature: "This statement was read to me and is a true statement, knowing that I am about to die." *Held* that the character of this statement as a dying declaration was apparent from these facts and, in any event, was conclusively established by the trial court's finding to that effect.

One who is guilty of the statutory offense of attempting an abortion may, if death results, be prosecuted either under the statute or for manslaughter.

In a prosecution for manslaughter resulting from an attempted abortion, a dying declaration made by the victim is admissible in evidence.

Argued November 2d—decided December 12th, 1927.

INFORMATION charging the accused with the crime of manslaughter, brought to the Superior Court in Fairfield County and tried to the jury before *Wolfe, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*John B. Dillon,* for the appellant (the accused).

*William H. Comley,* State's Attorney, with whom, on the brief, was *Lorin W. Willis,* Assistant State's Attorney, for the appellee (the State).

HAINES, J.  The State offered evidence to prove and claimed to have proved, that the accused, who maintained an office as a medical practitioner at Bridgeport, was consulted October 28th, 1926, by one Mabel A. Derry, who was pregnant, and upon the advice of the accused, consented to an operation for abortion, which the accused agreed to perform for $100; that between that date and November 23d, 1926, the accused made several unsuccessful attempts to procure an abortion upon her, and on the latter date, employed surgical instruments for that purpose; that in the use of these instruments he perforated an intestine from which a violent peritonitis was set up, which caused her death on November 29th, 1926.  The accused was tried upon an information for manslaughter, and upon the trial the State offered in evidence a paper, which was admitted over the objection of the accused.  Upon this is based the first of the two assignments of error upon this appeal.

The State called one Arnolsky, a sergeant of police in Bridgeport, who testified that on November 23d, 1926, he was called to the office of the accused about nine o'clock in the evening, where he found Sergeant Larney of the Bridgeport police force, together with the accused, a woman named Rabinowitz, and her husband.  He then testified, without objection, that the latter complained that his wife had come to the office of the accused to have an abortion performed upon her; that while the witness was inquiring about this matter, he heard a girl call from the upper rooms of

the doctor's apartments, and, upon ascending the stairs, found Mabel A. Derry lying on a cot and in great pain; that he instructed Sergeant Larney to take a statement from her, and the latter wrote down what she said to him in her own words. None of the evidence thus testified to without objection was admissible; so far as appears, the accused was not then present. An ambulance was sent for, and upon its arrival and in the presence and hearing of the accused, this written statement was read to the girl and she was asked whether it was true, upon which she affirmed that it was and signed it. Neither during the reading, nor at any time before the girl was removed in the ambulance, did the accused make any denial or explanation of her statements so read in his presence and hearing. It was further testified that at no time during or prior to the reading of this statement, was the accused under arrest, nor was he accused by the officers of any illegal act, nor had any warrant been issued for his arrest.

This written statement was offered by the State for the declared purpose of characterizing the conduct of the accused upon that occasion, and was admitted over the objection of the accused that it was hearsay evidence, the court saying to the jury: "Of course, this paper, gentlemen, is admitted, not for the purpose of proving the truth of the statements contained in the paper, but as simply showing the attitude of this defendant and his conduct when the paper was read to him upon the occasion in question, and is limited to that purpose." The paper purports to give the circumstances attending the several visits of Mabel A. Derry to the office and apartments of the accused and the attempts made by him upon her to procure an abortion. It was dated November 23d, 1926, signed by Mabel A. Derry, and witnessed by the ambulance phy-

sician, the ambulance driver, and the two officers named.

The statements made by her had the effect of a direct charge against the accused of responsibility for her then condition. The circumstances surrounding her presence and condition in the apartments of the accused manifestly called for explanation from him. It is clear that he knew and appreciated the significance of the statements; all the facts were known to him and he had a fair opportunity to explain without restraint. He made no statement or explanation whatsoever. The conduct of an accused person under such circumstances, when he is in a position to deny the charges, and under no compulsion, as in this case, is always relevant to the issue of guilt. *State* v. *Ferrone,* 97 Conn. 258, 265, 116 Atl. 336; *State* v. *Wakefield,* 88 Conn. 164, 90 Atl. 230; *Commonwealth* v. *Dewhirst,* 190 Mass. 293, 76 N. E. 1052; Wharton on Criminal Evidence (8th Ed.) §679; 1 Wigmore on Evidence (2d Ed.) §273.

In the first of the cases above cited, we said: "Statements made in his [the accused's] hearing, which are relevant and material, to which he makes no reply, may be given in evidence as indicative of conduct on his part, when the circumstances show that he heard, understood and comprehended the statement, and the facts are known to him and he had the opportunity to speak and the circumstances naturally called for a reply from him."

We do not overlook the fact that, in brief and argument, the accused now claims that this paper should not have been admitted because the heading was not a statement by the girl herself, but was put on by the officer of his own volition. This heading is as follows: "November 23, 1926. Statement of Mabel Derry, age twenty, of 561 Brooks Street, in regard to her being

operated on for an abortion by Dr. Yochelman." An examination of the record shows that the sole objection made to the admission of the paper when it was offered, was that it was hearsay evidence, but it does not appear that the court's attention was specifically called to the claim that the hearsay objection related to the heading. It is obvious that Mabel A. Derry did not make the statement in the heading, but that it was the composition of the officer who took down her statement, and since the court has expressly found that the statement made by her was read to her and in the presence and hearing of the accused, the heading could not have been claimed to have been admissible because it does not appear that that was read to her or in the presence of the accused. But the fact that it was hearsay evidence and inadmissible, does not make the admission of the statement a harmful error. The admitted language of the girl shows clearly that she was making a statement concerning an operation upon her by the accused for the purpose of procuring an abortion, and the heading adds no information beyond that except as to her age and address, and these facts were obviously supplied by her. Therefore the admission of this statement with the heading was not a harmful error, since the rights of the accused could not have been prejudiced by the admission of the heading, which merely reiterated a fact found in the statement and in the dying declaration.

The second assignment relates to the admission, over the defendant's objection, of another written statement signed by Mabel A. Derry, and offered as her dying declaration. Sergeant Arnolsky visited her at the hospital November 24th, 1926, and the detailed statement which she made to him at that time was written down by him and signed by her. At this time she expressed the belief that she would live. The

officer again visited her on the night of November 27th, 1926, and she was then in a very weak condition, and stated that she was without hope of recovery and expected to die. The officer then read to her the statement of November 24th, 1926, "very slowly and carefully." She again affirmed the truth of the statement and, at the request of the officer, affixed her signature to it. She had signed on November 24th, 1926, in the presence of Sergeant Arnolsky and Detective Sergeant Murphy. The last signature, made November 27th, 1926, was in the presence of the ambulance surgeon who had witnessed the first statement at the apartment of the accused, and also Dr. Goldys and Sergeant Arnolsky. The following appears over her last signature: "Nov. 27, 1926. This statement was read to me and is a true statement, knowing that I am about to die." The character of the statement as a dying declaration, is clear from the record, but in any event, the finding of the judge upon inquiry, that this was its character, is conclusive. *State* v. *McGowan,* 66 Conn. 392, 395, 34 Atl. 99.

The record discloses that the objection made to the admission of this statement was that "in a prosecution for manslaughter where the immediate cause of death was the performance of an abortion, the dying declaration of the deceased, tending to show that an abortion had been committed upon her by the accused, is not admissible." In attempting the support of that claim before this court, counsel for the accused cites General Statutes, §6200, which deals with the offense of abortion or attempted abortion, and argues, citing many authorities, that as the offense described in that statute does not necessarily involve the death of the victim, the admission of a dying declaration is erroneous. It is not necessary to discuss that proposition,

because counsel apparently overlooks the fact that the information in the present case is for a homicide in the degree of manslaughter, and not for the statutory offense of abortion. An essential ingredient of this offense of manslaughter is the death of the victim, and the inquiry is as to the manner of her coming to her death. The accused admits that, where the prosecution is "for an offense involving legally the resulting death as a necessary element," dying declarations are admissible. The charge of manslaughter is of this character.

If one engages in an act which is unlawful because prohibited by statute, as, for example, a prize fight, and in the doing of that act, unintentionally and without malice, causes the death of another, he may be prosecuted for manslaughter. 2 Swift's Digest, side pages 278, 279. So if one be guilty of the statutory offense of attempting an abortion, and death results, he may be prosecuted under the statute or for manslaughter. *State* v. *Power,* 24 Wash. 34, 63 Pac. 1112; *Cook* v. *People,* 177 Ill. 146, 52 N. E. 273; *Smith* v. *State,* 33 Me. 48; *State* v *McNab,* 20 N. H. 160; 29 Corpus Juris, p. 1152, §138.

The brief of the accused contains this statement of the law: "Dying declarations are statements of material facts concerning the cause and circumstances of the homicide. They are restricted to the act of killing, and to the circumstances attending it, and form part of the *res gestæ.*" If the accused had been charged with homicide by shooting, the circumstances attending the shooting set forth in a dying declaration would be clearly admissible; and in the present charge of homicide by attempted abortion, a similar declaration of the circumstances attending the attempted abortion, is also admissible. *State* v. *McGowan,* 66 Conn. 392,

394, 34 Atl. 99; *State* v. *Lee*, 65 Conn. 265, 280, 30 Atl. 1110.

There is no error.

In this opinion the other judges concurred.