No. 16,476.

The People *v.* Cox.

(228 P. [2d] 163)

Decided January 2, 1951.   Rehearing denied February 19, 1951.

Mr. John W. Metzger, Attorney General, Mr. Bert M. Keating, Mr. Max D. Melville, Mr. Gerald M. Quiat, for the people.

Mr. John F. Mueller, Mr. Gregory A. Mueller, Mr. Earl J. Hower, for defendant in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

Arthur R. Cox was charged in a criminal information, under section 39, chapter 48, '35 C.S.A., with causing the death of one Denton Mead, by driving an automobile in a reckless, negligent and careless manner and with wanton and reckless disregard of human life and safety, while under the influence of intoxicating liquor. At the close of all the evidence the court, on motion of counsel for defendant, instructed the jury to return a verdict of not guilty, on the ground that under the evidence it was equally possible that death resulted from a cause for which defendant Cox was not responsible, as from one for which he was responsible, and that under the facts here shown any determination of the cause of death could only be speculative and conjectural and could not support a verdict of guilty. The people bring the case here for a review of the court's ruling.

There is no substantial dispute as to the facts. In brief, the evidence discloses that about 9 o'clock p.m., on December 18, 1948, a very cold night, decedent Mead was thrown from the car which he was driving, for a distance of about ten feet to the middle of the street, as the result of a collision of his car with a heavily laden truck. Shortly thereafter, as he lay on the pavement, he spoke to a witness who had gone to his assistance, asking where he was, saying that he wanted to go home. When told that the ambulance was coming, he said he didn't want an ambulance, he wanted to go home. A little later he said he was cold and began to shake. A coat was placed over him and he was partially raised off the cold pavement. He then told the witness that he would like to get up, or to help him up. His voice was neither faint nor loud; the conversation was normal. One of the patrolmen present testified that when he saw Mead, after the first accident, he did not seem to be badly injured. Just as effort was being made to place a canvas underneath him, he started to say

something further, when, while he was yet speaking, he was struck by a car being driven at a high rate of speed by defendant Cox, which threw him forward some forty feet along the pavement where he was found to be dead when examined immediately afterwards.

Autopsy disclosed numerous abrasions, contusions and lacerations, particularly marked on the face; fractures of both collarbones and the first rib on both sides; fracture of the sternum or chest bone, and the left hip bone, "with extension of this boney prominent into the bladder which ruptured the bladder"; also an extensive fracture of the left frontal bone extending into multiple fractures of the base of the skull, with separation of the bony parts and bruising and tearing of the brain and of its covering.

The two pathologists who performed the autopsy testified that all the injuries were inflicted before death; that the head injuries were the direct cause of death; that multiple fractures and internal injuries were contributing causes, and that it would have been impossible for a person suffering such injuries to have spoken rationally or have been conscious after the injuries were incurred.

To the contrary, two pathologists and a neurologist were called as witnesses in behalf of defendant and each testified that in his opinion it was possible that a person, suffering the injuries shown by the autopsy report and testimony, could have regained consciousness and uttered words as Mead did. None of defendant's witnesses actually saw Mead's body, and they knew the extent of his injuries only as appeared from the autopsy report.

█ It may be, as declared by the trial court, equally possible that Mead was fatally injured in the first accident rather than as a result of being struck by defendant's car. If so, that alone does not absolve defendant. I may not wantonly attack a dying man, and if thereby I hasten or contribute to his death, it is no defense that he would have died in any event.

In *State v. Smith,* 73 Iowa 32, 34 N.W. 597, defendant's wife died following a beating by him. She was intoxicated at the time, had suffered from exposure, and was afflicted with a heart condition which might cause very sudden death. One of the examining physicians testified that he did not consider the injuries sufficient to account for her death—not of themselves—but that in his opinion they contributed to or accelerated her death in some degree. The other testified that if the woman was not dead and he was called to treat the wounds they found, he would not consider them even serious. The court said, "It surely ought not to be the law that because a person is afflicted with a mortal malady, from which he must soon die, whether his ailment be caused by natural or artificial causes, another may be excused for acts of violence which hasten or contribute to or cause death sooner than it would otherwise occur," and conviction of manslaughter was affirmed.

In *Duque v. State,* 56 Tex. Cr. 214, 119 S.W. 687, after decedent had been beaten by a third person, defendant also gave him a beating, and it was held that if defendant contributed to bringing about or hastening death he would be guilty of homicide regardless of whether the first assault ultimately might have caused death.

In *State v. Weston,* 155 Ore. 556, 64 P. (2d) 536, defendant shot a deputy sheriff as he lay in the roadway, after being shot by another, with no signs of life other than breathing, gurgling in his mouth, and the flow of blood. The shot from defendant's gun entered the left arm and face, breaking bones in the forearm. The wounds were not mortal, but the physician who performed an autopsy testified, "I certainly would think that the broken bones in the forearm and the hand and the wounds in the face would contribute to hasten death by virtue of shock and the little loss—or local loss of blood, whatever it might be, in addition to that already occurring in the chest and abdominal cavity." The court said, "It may be that Loll was mortally wounded by

Fiedler; nevertheless, the defendant was guilty of the crime charged in the indictment if the effects of his shot hastened Loll's death," and conviction was affirmed. In *State v. BeBee,* 113 Utah 399, 195 P. (2d) 746, the court said: "The evidence was uncontradicted that at the time the second shot was fired decedent was still alive. The first shot knocked decedent down and while he appeared to be struggling to get up, defendant shot him again. As long as there is life in a human being the extinguishment of it may be homicide. Where it cannot be determined which of the wounds received by a decedent caused or contributed to his death it becomes a question of fact for a jury to determine."

In *State v. Francis,* 152 S. C. 17, 149 S.E. 348, 364, the court, quoting from 21 A. & E. Ency. of Law (2d ed), p. 92, said: "But though a human body must be alive in order that it may be the subject of homicide, yet the quantity of vitality which it retains at the moment the fatal blow is given, and the length of time life would otherwise have continued, are immaterial considerations. *If any life at all is left in the human body, even the least spark, the extinguishment of it is as much homicide as the killing of the most vital being.*"

"One is not relieved from guilt of the crime of homicide by reason of the fact that the person killed has previously been mortally wounded by another, if the act of the accused actually causes or accelerates death." 26 Am. Jur. 192, §49.

"Responsibility attaches where the injury materially accelerates the death, although the death is proximately occasioned by a preexisting cause." 40 C.J.S. 855, §11 d.

The question for resolution in the instant case, then, was not as considered by the trial court, whether the injuries inflicted by defendant were the proximate cause of death, but rather whether or not those injuries hastened or contributed to death. Mead was alive and engaged in speaking rationally when struck by defendant's car. He was dead immediately afterwards. The blow

inflicted was so violent as likely to be fatal regardless of prior injuries, and such as inevitably to cause serious bruises, contusions and shock. Presumptively in such case that blow caused the death. True, there is no expert testimony here as to which of the many injuries were then received and none that such injuries actually did contribute to or hasten death, but we think the blow was such as not to require expert testimony to that end. That those effects are the natural and inevitable consequences of such a blow as was inflicted by defendant's automobile is a matter of common knowledge.

As said in *State v. Sala* (Nevada), 169 P. (2d) 524: "As to the element of the cause of death, it was sufficient if, from the evidence, it was proven that the injuries inflicted by the second series of beatings were of such a nature that, in their natural and probable consequence, they would produce death, or at least materially contribute to and accelerate same."

■ The evidence required submission of the question of guilt to the jury; the court erred in directing the verdict of not guilty, and the judgment is reversed for this error in law.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HOLLAND dissent.

MR. CHIEF JUSTICE HILLIARD dissenting.

In potency this dissenting opinion may be likened unto that of the court's opinion, which is nil. In sum the court's opinion is a gratuitous criticism of the trial court for exercising an unchallengeable jurisdictional function in the matter of a criminal proceeding, and at a stage thereof when such action forever foreclosed all courts from further or different action.

The charge was manslaughter. At the conclusion of all evidence, counsel for defendant, challenging the sufficiency thereof to sustain a conviction, and stating their contention variously, moved for a directed verdict of

not guilty, which was granted. Such a verdict was returned in full form, and defendant was discharged. It follows, that, since from the beginning of the trial proper, as per all the books, defendant was in jeopardy, his acquittal ended the prosecution on the charge stated in the information for all time. Const., art. II, §18. Why, then, the furor indulged here? Why do we employ the futile language that "there was ample evidence to require submission of the question of guilt to the jury?" The words used, or their equivalent, are pertinent in a civil action where on review we conclude the trial court should not have directed a verdict; but in a criminal prosecution in the circumstances here, such words are void of pertinence. Whether at the close of all the evidence in a criminal prosecution there shall be direction of acquittal is determinable solely by the trial judge, and if denied, and conviction follows, the ruling is subject to review at the instance of the defendant; but if based on the trial court's appraisal of the evidence there shall be a directed verdict of not guilty, as here, perforce, we are powerless to require the court to undo its orders or otherwise change or alter the status of defendant resulting therefrom. In such circumstances, as clearly we have held, the case is not reviewable and the writ of error will be dismissed. *People v. Hopkins,* 70 Colo. 163, 197 Pac. 1020; *People v. Kippy,* 64 Colo. 597, 173 Pac. 395.

The opinion in the Kippy case was written by the late Chief Justice Hill, and in the Hopkins case by former Chief Justice Burke. In compelling logic those eminent jurists, writing en banc opinions, made clear that where the accused has been acquitted by direction of the court, and the question involved rests on the sufficiency of the evidence to warrant a conviction, this court will not entertain a writ of error on behalf of the people. In the Kippy case we said: "Section 1997, Rev. Stats., 1908 ['35 C.S.A., c. 48, §500], provides that writs of error shall lie upon behalf of the people to review decisions

in criminal cases upon questions of law arising upon the trial, motions to quash, demurrers, pleas in bar, pleas in abatement, motions in arrest of judgment or where a statute is declared unconstitutional. This is followed with a proviso that nothing in the act shall be construed so as to place a defendant in jeopardy a second time for the same offense. This defendant cannot be tried again for the crime charged in the information. There is nothing in the testimony to make it specially applicable to other cases which may follow. It is improbable that a similar state of facts will arise in another case, hence, a consideration of the testimony and a declaration concerning it, would not establish any real principle of law, or be of any assistance, or act as a guide * * *, for which reason we cannot conceive, by the language used, that the legislature intended to provide for what would be a useless review of a state of facts as here presented. The writ of error will be dismissed." In the Hopkins case, we said: "At the close of the people's evidence defendants moved for a directed verdict on the ground among others, that there was no sufficient evidence of the *corpus delicti*. The motion was sustained, verdict was so entered, and defendant discharged. The district attorney brings error under Sec. 1997, R.S. 1908 ['35 C.S.A., c. 48, §500], authorizing the people to have so reviewed 'decisions of the trial court in any criminal case upon questions of law arising upon the trial,' etc. * * * The only question for consideration here is, Was there sufficient evidence of the *corpus delicti* to carry the cause to the jury? In construing said Sec. 1997, we have held that the question of the sufficiency of the whole evidence, where 'there is nothing in the testimony to make it specially applicable to other cases which may follow,' is not a question reviewable here under said section. *People v. Kippy,* 64 Colo. 597, 173 Pac. 395. If the question of the sufficiency of the evidence as a whole is not so reviewable, certainly the question of the sufficiency of that evidence as to any particular element of the

crime such as the venue, the identity of the defendant, or the *corpus delicti*, where, as here, 'there is nothing in the testimony to make it specially applicable to other cases which may follow,' is not so reviewable, and that case is conclusive here. The former opinion is withdrawn and the writ dismissed."

In emphasis of the philosophy of the Colorado cases just reviewed, I pause to state that the prosecution here grew out of the following unusual circumstances. It appears that the decedent, driving his car at night, carelessly drove into the rear of a moving heavy truck loaded with stone, which was traveling at twenty-two miles per hour. Decedent's car was greatly damaged, and he, gravely injured, was thrown violently into the street. Shortly thereafter, and when decedent lay on the street where he was thrown as the result of his own carelessness, defendant, and while under the influence of liquor, as charged, struck decedent with his car. Whether he died of the first happening before the second untoward occurrence will never be known. There was no evidence, as the court's opinion practically concedes, that the wounds which the experts testified caused death, were the result of the second accident. There was expert evidence, however, not controverted, as the trial court expressly found, "that all the injuries set forth in the anatomical findings in the autopsy report could have been sustained in the first accident." In that view, and since the first accident was the result of the decedent's own carelessness, may it be said that defendant's motion for a directed verdict, on the ground, inter alia, that "it has not been established by all of the evidence beyond a reasonable doubt that the decedent suffered injuries in a collision with a motor vehicle operated by defendant Cox," was not to be considered by the trial court, and, if considered, was not resolvable there? And, further, since the resolution of the motion was favorable to defendant, does it lie with us to examine as to the sufficiency of the evidence? In the Kippy and Hopkins

cases our right to be so concerned not only is expressly disclaimed, but it is held that to take such steps would constitute a "useless review." Consequently, if nothing else moved us to that end, "not so," as our distinguished late Chief Justice Denison was wont to say, the unavailability thereof should stay the hand of reviewing ministers of justice. A further thought in line with the philosophy of those causes is, that a state of facts less likely to recur than that here, as I think, is hardly conceivable.

Lest it be thought I have overlooked the cases cited in the court's opinion, I respectfully emphasize that those cases involved reviews invoked by defendants who had suffered conviction below, and whose contention on error was that the evidence was not sufficient to sustain conviction. I venture to challenge their application in a review sought by the people in a case where the defendant has been found not guilty and formally discharged, as here.

On the authority of our pronouncements set forth above, and proceeding in recognition of the eternal fitness of things, I think the words "writ of error dismissed," should conclude the disposition of this inquiry. The liberties of the people, as has been said, are preserved through the instrumentality of an "independent judiciary." The quoted words, as reasonably may be said, apply not less to trial judges than to reviewing judges.

So, since the court has written to no effect, and I in vain, I apprehend that trial judges, acting under an oath which is quite as solemn as ours, will continue to entertain motions challenging the sufficiency of the evidence to sustain conviction in criminal cases, and, disregarding futile observations from whatever source, make determination as advised.

Mr. Justice Holland concurs in this dissenting opinion.