No. 20,326.

JOHN KRUTKA, AS SHERIFF OF PUEBLO COUNTY, *v.* JOE SPINUZZI.

(384 P. [2d] 928)

Decided September 3, 1963.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. MATT J. KIKEL, District Attorney, Tenth Judicial District, Mr. R. ALLAN GLOVER, Deputy, Mr. JON W. BURKE, for plaintiff in error.

Mr. V. G. SEAVY, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

BY direct information Spinuzzi was charged with the unlawful and premeditated murder of one James Scott. To this charge Spinuzzi pled not guilty, and a jury trial ensued.

Upon trial, after the People had concluded its presentation of the evidence, Spinuzzi moved the court for a directed verdict of not guilty and as reason therefor argued that the evidence was legally insufficient to warrant submission of the matter to the jury and more particularly that there was insufficient evidence tending to tie Spinuzzi to the death of Scott. After much argu-

ment the trial court eventually granted this motion and the jury by direction of the court returned verdicts adjudging Spinuzzi to be not guilty of murder, be it in the first or second degree, nor of either grade of manslaughter.

Being highly dissatisfied with the outcome of the trial and being of the firm view that the trial judge had committed grievous error, the People at the instance of the district attorney sought a review of the judgment of acquittal by writ of error, as provided by C.R.S. '53, 39-7-27.

Upon review this Court "disapproved" of the action of the trial court and held, inter alia, that the evidence was amply sufficient to have warranted, indeed to have required, submission to the jury of the charge of murder in the first degree. *People v. Spinuzzi*, 149 Colo. 321, 369 P. (2d) 427.

Thereafter, the People filed a petition with the trial court in the original criminal proceeding, seeking a reissuance of the warrant calling for the arrest of Spinuzzi for the murder of Scott. The trial court granted this petition and an *alias capias* having thereafter issued, the sheriff of Pueblo County, John Krutka, proceeded to rearrest Spinuzzi and confine him in the county jail.

Spinuzzi made prompt application to the trial court for the issuance of a writ in the nature of habeas corpus, contending that he had already been tried and acquitted on the very charge for which he was then being held. The writ issued and in due course the sheriff filed his return, admitting that he was "imprisoning" Spinuzzi and citing as his authority to do so the fact that he held a warrant duly issued in a criminal proceeding wherein a judgment of acquittal had been "disapproved" by the Supreme Court because of an error in law, and that "therefore the original case has never come to rest so as to terminate the original jeopardy."

Upon hearing, the court directed that the writ be made permanent and ordered that Spinuzzi be dis-

charged from the custody of Krutka. It should be noted, parenthetically, that the judge who heard the application for habeas corpus did not preside at the trial which culminated in a directed verdict of acquittal on the charge that Spinuzzi murdered Scott.

It is Spinuzzi's basic position that at the moment a jury was impaneled and sworn to try him on the murder charge he was placed "in jeopardy" and that to try him again on the same charge is not only in violation of Article II, section 18 of the Colorado Constitution, which prohibits any person from being "twice put in jeopardy for the same offense," but also in direct violation of C.R.S. '53, 39-7-27, which states that though writs of error shall lie in behalf of the State to review decisions of the trial court in any criminal case upon questions of law arising upon trial, that nevertheless "nothing in this section shall be construed so as to place a defendant in jeopardy a second time for the same offense," and the fact that the judgment of acquittal was subsequently "disapproved" by this Court does not in anywise alter the situation.

Krutka, in turn contends that this is not a case of Spinuzzi being tried twice for the same offense, and that actually he has not as yet been tried once for this offense — at least not in a trial free from grievous error! Krutka emphasizes the fact that Article II, section 18 of the Colorado Constitution declares, inter alia, that an accused shall not be deemed to have been in jeopardy "if the judgment be reversed for error in law." Krutka claims that the judgment of acquittal was, in effect, reversed for an error in law and hence under this constitutional definition of "jeopardy" Spinuzzi is "not deemed to have been in jeopardy."

■ In our view the trial court was eminently correct in making the writ permanent and discharging Spinuzzi from the custody of the sheriff. Indeed, C.R.S. '53, 39-7-27 in and of itself is virtually dispositive of the present controversy, and this statute is not at odds with

Article II, section 18 of the Colorado Constitution when the latter is considered in context. However, reference to certain basic principles may serve to put our immediate problem in better focus.

■ 15 Am. Jur. 46, Criminal Law § 369 states that: "A person is in legal jeopardy when he is put on trial before a court of competent jurisdiction, on an indictment or information which is sufficient in form and substance to sustain a conviction and a jury has been charged with his deliverance. *A jury is said to be thus charged when it is impaneled and sworn.*" (Emphasis supplied.)

■ The foregoing test was approved in so many words by this Court in *Davidson v. People,* 64 Colo. 281, 170 P. 962. In *Castner v. People,* 67 Colo. 327, 184 P. 387, it was stated that when a court directs a verdict of not guilty, such directed verdict is equivalent to an acquittal and "will support a plea of former jeopardy."

A jury having been "impaneled and sworn," Spinuzzi most definitely was placed "in jeopardy" on the charge of murdering Scott, unless such is somehow altered by the fact that this Court disapproved of the judgment of acquittal entered by the trial court.

In 2 Am. Jur., 984 to 986, Appeal and Error, §§ 226, 227, appears the following:

"At common law as it existed in the United States, a writ of error was demandable as of right by the defendant in a criminal, as well as a civil, case. However, the right to appeal or error proceedings is now almost wholly conferred by statutory and constitutional provisions. And under the modern practice, with the possible exception of minor infractions, it is elementary that the defendant in a criminal case may institute appeal or error proceedings. *A different rule exists as to the state or United States, however.*

\* \* \*

"*In the absence of a statute clearly conferring the right as a general rule, the state or United States cannot*

*appeal or bring error proceedings from a judgment in favor of the defendant in a criminal case.* A few states make exceptions to this rule where an indictment or information is quashed or held bad on demurrer, but in most of the states wherein this exception exists, it is statutory. Statutes have been enacted in a number of jurisdictions, however, conferring the right of appeal upon the state in limited cases. Most of these statutes simply give the state the right of review of the steps preliminary to the trial and before the defendant has been legally put in jeopardy, any statute going so far as to allow the setting aside of a verdict of acquittal being generally held unconstitutional as putting the accused in jeopardy a second time. Thus, under statutes in some jurisdictions, the state may appeal from a discharge on a motion to quash or dismiss an indictment or information, or a decision to sustain a demurrer thereto, and from the judgment for the defendant on a special verdict or on motion in arrest of judgment. It is also provided by statute in some states than an appeal may be taken by the state from a verdict of acquittal in mis-demeanor cases; *and there are statutes permitting a state to appeal from a verdict of acquittal in felony cases for the purpose of obtaining a decision on the correctness of a ruling made by the trial court, but not for the purpose of affecting the verdict in any way.*" (Emphasis supplied.)

In 15 Am. Jur. 96, Criminal Law, § 438, it is stated:

"From the standpoint of a second prosecution for the same offense it may be observed here that it is a settled doctrine that after jeopardy has attached in a criminal case, a writ of error does not lie in behalf of the state to reverse a judgment in favor of the defendant, except under and in accordance with statutory provisions, whether the judgment was rendered as a verdict of acquittal or on the determination by the court of a question of law, because otherwise the defendant would

be subject to retrial after acquittal and would thereby be put twice in jeopardy for the same offense."

As an addendum to the foregoing quotation, in the 1963 Cumulative Supplement to 15 Am. Jur. at page 24, appears the following:

"Likewise, it seems that generally any statute going so far as expressly, or by necessary inference, to grant the state a right of appeal from an acquittal in a criminal case, *and thus subject the defendant to the possibility of another trial would according to the weight of authority, be unconstitutional as putting the accused in jeopardy a second time, this being particularly true in cases in which sentence of imprisonment or death may be imposed.* A few cases, however, adopt the view that the jeopardy involved is single and continues until a result is reached that is free from error. Thus, a statute which, by permitting the state to appeal in a criminal case, operates to subject the accused to a second trial on the same indictment does not expose him to double jeopardy." (Emphasis supplied.)

One of these "few cases . . . permitting the state to appeal in a criminal case . . . [and] to subject the accused to a second trial on the same indictment" is *State v. Palko,* 122 Conn. 529, 191 A. 320, a case strongly relied upon by the sheriff, Krutka, and which will be the subject of some comment, infra.

From the foregoing it is learned that historically a defendant who suffered a conviction in a criminal proceeding had a common law right to obtain appellate review of the proceedings. In Colorado this common law right was given statutory recognition and standing as far back as 1861 when the territorial legislature declared that "writs of error in all criminal cases, not capital, shall be considered as writs of right, and shall issue of course." That this statutory right inured to the benefit of the defendant only, and not the People, is quite evident from a complete reading of the statute, which goes on to state that no such writ of error shall

be a supersedeas unless certain conditions are met, "in which case the Clerk of the Supreme Court shall issue a supersedeas which shall have the effect to stay execution of the sentence, but not to discharge the prisoner from custody."

According to the great weight of authority, however, writ of error in behalf of the People whereby review could be sought of a judgment of acquittal did not exist at the common law. Accordingly, in Colorado the People historically did not have the right to obtain review of a judgment of acquittal in a criminal proceeding, and this was the status of things when the State Constitution was adopted in 1876.

It was not until 1907 that the General Assembly enacted the following: "Writs of error shall lie on behalf of the state, or the people, to review decisions of the trial court in any criminal case upon questions of law arising upon trial . . . *nothing in this section shall be construed so as to place a defendant in jeopardy a second time for the same offense.*" (Emphasis supplied.)

In thus granting to the People the right to obtain a review by writ of error of a criminal proceeding it was the clearly expressed legislative intent that in no event could the accused be tried a second time for the same offense for which he had already been acquitted. To authorize a retrial in such situation would be in complete disregard of the very statute which empowers the People to seek review of a judgment of acquittal by writ of error. In other words, but for that portion of C.R.S. '53, 39-7-27, which was enacted by the General Assembly in 1907 and to which reference has already been made, the People would have no right to obtain review of a judgment of acquittal. So, the very statute which creates the right also contains language of limitation, which language in our view clearly prohibits a second trial of Spinuzzi on the charge of murdering Scott.

Krutka recognizes that C.R.S. '53, 39-7-27 provides that "nothing in this section shall be construed so as to

place a defendant in jeopardy for a second time for the same offense" and also that Article II, section 18 of the Colorado Constitution declares that no person shall ever twice be put in jeopardy for the same offense. But he, for obvious reasons, prefers to emphasize that part of Article II, section 18 of the Colorado Constitution which states that "if the judgment be reversed for error in law the accused shall not be deemed to have been in jeopardy." Krutka argues that under this definition of "jeopardy" Spinuzzi has not yet been in jeopardy, the judgment of acquittal having been reversed for error in law.

Technically speaking the judgment of acquittal entered in the case of *People v. Spinuzzi,* supra, has not, as yet, been "reversed," only "disapproved." But even had the judgment been "reversed," as was done in *People v. Cox,* 123 Colo. 179, 228 P. (2d) 163, this argument is untenable.

 Accordingly, the issue now to be determined is the meaning to be given the phrase "if the judgment be reversed for error in law the accused shall not be deemed to have been in jeopardy," as such appears in Article II, section 18 of the State Constitution. At first blush this might seem to be clear and unambiguous, and to encompass a situation where the People on review obtain a "reversal" of a judgment of acquittal for "an error in law." However, when this constitutional provision is viewed in context it becomes quite clear that such was not the intent of those who framed and adopted it.

It has frequently been said that the polestar in construing a constitutional provision is the intention of the makers and adopters. See 11 Am. Jur. 675 Constitutional Law, § 61. So, in *Boeing Aircraft Co. v. Reconstruction Finance Corporation, et al.,* 25 Wash. (2d) 652, 171 P. (2d) 838, it was declared that the meaning of the constitution of the State of Washington was fixed at the

time it was adopted and must be construed in the sense in which the framers understood it.

In a similar vein this Court in *Cooper Motors, Inc., v. Jackson County,* 131 Colo. 78, 279 P. (2d) 685, said:

"In construing a constitutional provision, courts should ascertain and give effect to the intent of the framers thereof and of the people who adopted it . . .

"A statute should be construed in a manner to harmonize it with existing constitutional provisions if it is reasonably possible to do so."

In support of the general proposition that in placing a construction on a provision of a constitution a court may and should look to the "state of things existing when the Constitution was framed and adopted" and that "a constitutional provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them," see 11 Am. Jur. 676 et seq. Constitutional Law, § 63.

Proceeding then to the problem at hand, did those who framed and adopted the Colorado Constitution intend that an "accused should not be deemed to have been in jeopardy" in the situation where the People on review by writ of error obtain a reversal of a judgment of acquittal in a criminal proceeding? Quite obviously they did not, for the very simple reason that as of the date the State Constitution was framed and adopted the People did not even have the right to sue out a writ of error in a criminal proceeding.

As of 1876 only the defendant had the right to a writ of error in a criminal proceeding. Hence, when read in this context, Article II, section 18 of the Colorado Constitution was of necessity only intended to preclude a defendant who on appeal obtained a reversal of his judgment of conviction from thereafter claiming former jeopardy when the state sought to try him again for the same offense. Such was the interpretation given this

Constitutional provision in *Young v. People*, 54 Colo. 293, 130 Pac. 1011.

It was not until 1907 that the People first obtained the right to sue out a writ of error in a criminal proceeding. The General Assembly in 1907 by providing that "writs of error shall issue on behalf of the state" quite obviously did not contemplate nor intend that the accused under any circumstances could be tried again for the offense for which he had theretofore been acquitted. To preclude this possibility the General Assembly then declared in broad, all-inclusive language, that "nothing in this section [providing that writs of error shall lie on behalf of the People] shall be construed so as to place a defendant in jeopardy a second time for the same offense."

Although the question before us has not heretofore been raised in its present form, we deem our disposition of the controversy to be in line with prior expressions of this Court. In *People v. Denver Athletic Club*, 63 Colo. 189, 164 P. 1158, the Denver Athletic Club was prosecuted for unlawfully selling intoxicating liquors without a license, its defense apparently being that the state liquor licensing law did not apply to private clubs. Trial to the court resulted in a dismissal of the charge. Pursuant to the provisions now contained in C.R.S. '53, 39-7-27, the People sought review of this judgment. The writ of error was eventually dismissed on the ground that the question as to the applicability of the state liquor licensing law to private clubs had become moot because: (1) in the intervening time the eighteenth amendment to the United States Constitution had been ratified by the required number of states; and (2) the Denver Athletic Club "by express terms of the statute [now appearing as C.R.S. '53, 39-7-27] may not be placed in jeopardy a second time for the alleged offense."

Similarly, in *People v. Kippy*, 64 Colo. 597, 173 P. 395, where a defendant was acquitted by direction of the court on a burglary charge, this Court in summarily

dismissing the writ of error sued out by the People flatly stated that "this defendant cannot be tried again for the crime charged in the information."

Finally, *Menton v. Johns,* 151 Colo. 276, 377 P. (2d) 104, poses a factual situation deemed to be most analogous to that in the instant case. There Menton was charged with the crime of assault to rob and conspiracy to commit robbery. To these charges he pled not guilty and a jury trial ensued. Upon trial, after all the evidence had been presented, the court on motion by Menton "dismissed the case" and discharged the accused, the court believing that the People had failed to establish venue. The People subsequently filed a motion for new trial on the ground that the court was mistaken in its belief that venue had not been established and that the record affirmatively showed that two witnesses had in fact testified in regard thereto. The trial court granted this motion and proposed to retry Menton on the same two charges above referred to, i.e., assault to rob and conspiracy to commit robbery. At this juncture Menton brought an original proceeding in this Court, praying for a writ of prohibition against the district court to enjoin all further proceedings against him on these two charges. His contention was that he "could not be twice put in jeopardy for the same offense." In sustaining Menton's position and in prohibiting the district court from again trying Menton for the same offense, it was said:

"We find nothing in the law that even remotely sanctions this new, novel and wholly unwarranted procedure of the district attorney and the district court.

\* \* \*

"To hold as contended by the respondents would be to delete from the Constitution Article II, section 18; to disregard *Markiewicz v. Black,* 138 Colo. 128, 330 P. (2d) 53, and all precedents and *indulge in revolutionary fantasy.*" (Emphasis supplied.)

In our considered view Spinuzzi is in exactly the

same position as was Menton, and if it be a "revolutionary fantasy" to attempt to again try Menton, then it is equally within the realm of fantasy to seek to retry Spinuzzi on the charge that he murdered Scott.

Krutka urges, however, that we should follow the rationale of *State v. Lee,* 65 Conn. 265, 30 A. 1110, and *State v. Palko,* supra, and that the concept of a "single and continuing jeopardy" until there be a trial "free from substantial error" is more logical and appealing to common sense. We are not here permitted to be governed by our personal concept as to what the law in this regard ought to be, but rather to determine what the law, in Colorado, *is.* It is believed to be of considerable significance to note that the constitutional provisions and statutory law of Connecticut bearing on this point are radically different from those of Colorado. For example, Connecticut does not have a constitutional provision precluding double jeopardy. Likewise, in Connecticut by statute the People and the defendant are on the same footing as concerns the right to seek appellate review of a criminal proceeding, i.e., either has the right to file a motion for a new trial, and if such be denied, either has the right to sue out a writ of error. Further, the statute in Connecticut granting this right to the People has no restriction, such as ours, that "nothing in this section shall be construed so as to place a defendant in jeopardy a second time for the same offense."

The judgment is affirmed.

Mr. Chief Justice Frantz dissents.

Mr. Chief Justice Frantz dissenting:

For a number of compelling reasons I cannot concur with the opinion of the Court. These reasons persuade me that Spinuzzi has never been in jeopardy. Believing they have validity and strength, I particularize them, and urge that these reasons require a different result

in this case than the one issuing from the majority opinion.

1. Spinuzzi has not been placed in jeopardy as that concept receives scope and definition in Sec. 18, Art. II of the Constitution of this state.

Originally the trial court determined the evidence to be insufficient to permit submission to the jury of the charge of murder lodged against Spinuzzi, and directed the jury to return verdicts of not guilty as to either degree of murder and as to either grade of manslaughter. Upon review, invoked by the People, we held that the trial court erred: that the evidence quantitatively and qualitatively required submission of the charge of first degree murder to the jury. *People v. Spinuzzi*, 149 Colo. 321, 369 P. (2d) 427.

To say of a set of proven facts that it requires a verdict of acquittal because of its insufficiency to establish a jury problem regarding an accusation when indeed it is sufficient constitutes an error in law. *State v. Ward*, 75 Iowa 637, 36 N.W. 765. To raise the question of the sufficiency of the evidence is to call upon the law-determining power of the court; if it were a fact problem, it would have been a matter for jury resolution. Hence, the motion for directed verdict presented questions of law to the trial court.

A familiar syllogistic formula may now be applied. "[I]f the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy," Sec. 18, Art. II; the Spinuzzi judgment was reversed for an error in law, *People v. Spinuzzi*, supra; therefore, Spinuzzi shall not be deemed to have been in jeopardy.

2. Sec. 18, Art. II has been definitively interpreted, and such interpretation does not sustain the theory that Spinuzzi has been in jeopardy.

I believe that the most definitive decision on the constitutional provision is *Young v. People*, 54 Colo. 293, 130 Pac. 1011. Spinuzzi can find no solace in the definitive

passages of this decision. I quote generously from the opinion:

"By section 18 of article II of the constitution of the state, it is provided:

" 'That no person shall be compelled to testify against himself in a criminal case nor shall any person be twice put in jeopardy for the same offense. If the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy.

"This provision of the constitution needs no construction; it is as plain and clear as language can make it. It means: First. If the jury disagree, that the accused may be tried again upon the charge as if no trial had been had; Second. If the judgment be arrested after the verdict, for any reason, that the defendant shall be deemed not to have been in jeopardy, and may again be tried as originally; and Third. *If the judgment be reversed for error in law, that then the defendant shall be deemed not to have been in jeopardy, and may be again tried under the information, upon every charge contained in it.* If the defendant in this case had not been in jeopardy, and such is declared to be the fact upon the record, by this provision of the constitution, the former judgment having been reversed for error in law, then he could be lawfully tried for and convicted of the highest degree of crime contained in the charge. *Upon a reversal of a conviction for error of law, under this provision, one accused of murder stands as though there never had been a former trial; his second trial is de novo.* * * * The accused stands upon a second trial as though the former trial had never taken place, and the state stands in precisely the same position. This is the evident purpose and intent of the framers of our constitution. Unless it be assumed that the criminal laws are designed to facilitate the escape from just punishment of those charged with offenses, instead of for the protection of society through punishment of those

who violate its laws, the above interpretation must be accepted as correct.

\* \* \*

"It is to be noticed that section 18 of article II, above quoted, upon the question of former jeopardy, differs widely from corresponding provisions found in the constitutions of those states where the doctrine is held that one convicted of murder in the second degree, under an information charging murder, cannot, on a new trial, be tried for a greater degree of crime than that of which he was first convicted. The constitutions of states so holding simply have the provision, in substance, that no person shall be twice put in jeopardy for the same offense. *They do not have the further provision, found in our constitution, that if the judgment be reversed for error in law the accused shall not be deemed to have been in jeopardy.* For this reason the cases from the various states, holding as above indicated, are not in point in determining the question of former jeopardy under a constitutional provision such as ours." (Emphasis supplied.)

*Ballensky v. People,* 116 Colo. 34, 178 P. (2d) 433, and *Bustamante v. People,* 136 Colo. 362, 317 P. (2d) 885, are to like effect.

3. It must be remembered that Spinuzzi was tried the second time in the same action. This is not a case where the People filed *anew* for the same offense. In fact, this last trial is but a *continuation* of the cause originally filed.

This theory was first advanced by Justice Holmes in the case of *Kepner v. United States,* 195 U.S. 100, 24 S.Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655, in his dissent.

Justice Holmes stated:

"It is more pertinent to observe that it seems to me that logically and rationally a man cannot be said to be more than once in jeopardy *in the same cause,* however often he may be tried. *The jeopardy is one continuing jeopardy from its beginning to the end of the cause.*

Everybody agrees that the principle in its origin was a rule forbidding a trial in a new and independent case where a man already had been tried once. But there is no rule that a man may not be tried twice in the same case." (Emphasis supplied.)

In *State v. Brunn,* 22 Wash. (2d) 120, 154 P.. (2d) 826, 157 A.L.R. 1049, the Court said, in adopting the view of Justice Holmes:

"There was, however, a dissent in the Kepner case by Mr. Justice Holmes, in which two other justices joined, which has been accepted as the true rule by the majority of legal writers and by some of the courts. It is not often that so much weight is accorded to a mere dissenting opinion, * * * "

Among those states which have followed the doctrine proposed by Mr. Justice Holmes is Colorado. We said in the case of *Bustamante v. People,* supra, "It is apparent that Art. II, § 18 of our Constitution means that *in the same action, upon retrial,* if the judgment was reversed for errors of law a defendant shall not be deemed to have been in jeopardy due to the first trial."

4. When Spinuzzi moved for a directed verdict in the first trial, the error of law committed in the granting of the motion was *induced* by him. He argued that there was insufficient evidence to constitute the crime of which he was charged. He is now estopped to say that he was put in jeopardy for a crime when he took a position to the contrary in the original trial, maintaining that the facts presented did not constitute a crime.

I believe the following language from the case of *State v. Davis,* 61 N.J. Super. 536, 161 Atl. (2d) 552, is pertinent:

"In general, an acquittal in a matter laid upon a sufficient indictment bars a subsequent prosecution for the same offense under another indictment or accusation. 2 Anderson, Wharton's Criminal Evidence, supra § 653. If the acquittal, however, is obtained, or the indictment quashed, on defendant's own motion it has been held

that defendant is estopped from advancing any theory in support of his claim of double jeopardy which is inconsistent with the theory advanced or position taken to secure his first acquittal."

See *Owens v. Abram,* 58 N.M. 682, 274 P. (2d) 630; *State v. Arnold,* 142 Kans. 589, 50 P. (2d) 1008.

5. We have heeded the plain words of Sec. 18, Art. II, expressly providing "that 'if the jury disagree * * * the accused shall not be deemed to have been in jeopardy.' * * * [U]nder the foregoing constitutional provision, there can be no doubt as to the view we should favor. It is expressly declared that the jury, upon failure to agree, may be discharged without prejudice to another trial." *In re Allison,* 13 Colo. 525, 22 Pac. 820, 10 L.R.A. 790.

Is this Court consistent in holding that the provision ("[i]f the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy") should be construed in regard to jury disagreement as avoiding jeopardy, but in regard to a reversal for error in law as constituting jeopardy? I believe the answer is too obvious to require any extended discussion.

I fear the damaging effect of what constitutes double jeopardy as defined and accepted by Mr. Justice McWilliams in his majority opinion, because if there is former jeopardy under his definition even though the constitution says the accused shall be deemed not to have been in jeopardy where the judgment is reversed for error in law, may it not be said that under the same definition there is former jeopardy: (a) if the jury disagrees, or (b) if the judgment be arrested after the verdict? I fear much of what is said not to be former jeopardy in the constitutional provision is placed in serious *jeopardy* by the majority opinion.

6. By C.R.S. '53, 39-7-27, the People are permitted to seek a review under certain circumstances of a judgment

adverse to the state in a criminal case. The statute directs that "nothing in this section shall be construed so as to place a defendant in jeopardy a second time for the same offense." Constitution and statute must be read together, and the mandate of the Constitution made part of the statute.

It is my conviction that what constitutes jeopardy is what Sec. 18, Art. II says constitutes jeopardy. It must be read into C.R.S. '53, 39-7-27, and if it is read into the statute, then Spinuzzi was not in jeopardy when the People sought to try him after we held that as a matter of law the evidence was sufficient to generate a jury question as to whether Spinuzzi was guilty of murder.

This concludes my bill of particulars. I perceive each reason appearing in it as being sufficient in itself to show that Spinuzzi has never been placed in jeopardy. My views, I maintain, are obedient to the constitutional precept.

And I do not believe the recent case of *Menton v. Johns,* 151 Colo. 276, 377 P. (2d) 104, to be contrary to my views. Hence, I am unable to agree with the majority that *Menton v. Johns* factually is "most analogous to that in the instant case." An appraisal of both cases reveals a distinction in depth.

There is a vast difference between the Menton case in which the trial court through inadvertence believed that the state had failed to introduce evidence on an essential matter when, in fact, it had, and directed a verdict of acquittal because of such mistaken belief, and the present case in which the trial court in considering *all* of the evidence held that it was insufficient to permit submission to the jury. In the Menton case there was a mistake as to the existence of certain evidence; in the latter case there was an awareness of the evidence adduced, but a mistake as to its value. The Menton case involved an error of fact, the present case an error of law.