[No. 20072-4-II. Division Two. April 3, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. NICHOLAUS J. MCDONALD, *Appellant*.

---

[13]*Id.* at 377.

606

*Patricia A. Pethick* and *Thomas E. Doyle*, for appellant (appointed counsel for appeal).

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

HUNT, J. — Nicholaus McDonald appeals his conviction for two counts of second degree murder. We affirm.

## FACTS

### I

#### THE MURDERS

On August 11, 1995, McDonald and his boyfriend, Brian Bassett, executed their week-old plan to steal money and

an automobile from Bassett's parents, to kill Bassett's parents if they were home, and to drive to California.[1] They went to Bassett's parents' home in McCleary. Bassett entered first and fatally shot his father and mother, Michael and Wendy Bassett. McDonald entered next, noticed that Michael was still breathing, and shot him in the head. Bassett's five-year-old brother Austin was kneeling next to his parents' bodies; Bassett told him to take a bath to wash off the blood. Austin was drowned in the bathtub.

Michael died of multiple gunshot wounds to the head and trunk. Either of two head wounds alone would have been fatal.

## II
### STATEMENTS TO POLICE AND INMATES

McDonald made several inculpatory statements to police, both before and after his arrest. He said that he had killed Austin. These statements were admitted at trial. McDonald does not challenge their admission.

During Bassett's booking, an officer overheard him mumbling about killing his mother and father, but was not sure whether Bassett said he had killed his brother. McDonald did not attempt to introduce this statement at trial.

After Bassett's arrest, but before his trial, Bassett made statements to Ernie Lunsford, a fellow inmate at Grays Harbor County Jail. Bassett first claimed that McDonald had killed Austin, then claimed that he (Bassett) had killed his entire family. At a pretrial hearing in McDonald's case, the court determined that Bassett's hearsay statements were inadmissible because they lacked sufficient indicia of reliability.

McDonald confessed to detectives that Bassett told him

[1] A few days earlier, McDonald had attempted to cash a stolen, forged check from Michael Bassett's credit card account.

to drown Austin, that Bassett ran the bathwater, and that he (McDonald) held Austin under the water until he died.

## III
### TRIAL

McDonald and Bassett were charged with three counts of aggravated first degree murder, RCW 9A.32.030(1)(a) and RCW 10.95.020(7), (8). They were tried separately.

### A. McDonald's Testimony

At his trial, McDonald testified that on August 11, 1995, he and Bassett went to the Bassett family home. They put a ladder to an upstairs window, and Bassett climbed into the house. A few minutes later, McDonald heard a number of gunshots inside. Bassett then came outside and told McDonald to go in and "finish his parents off."

When McDonald entered the home, he saw Michael and Wendy Bassett on the floor, both with multiple gunshot wounds, and Austin Bassett on the floor between them, crying. McDonald told Austin to leave the room. McDonald heard Michael breathing, so he picked up the gun and shot him once in the head to end Michael's suffering. Michael continued breathing for several more minutes. McDonald further testified that he went into the bathroom and saw Bassett cleaning up and Austin dead in the bathtub. McDonald and Bassett put Michael's and Austin's bodies in the Bassetts' van and dumped them on a nearby logging road. They disposed of Wendy's body at the property's pump house. They then loaded the van, left the Bassett residence, stopped at McDonald's home to retrieve some belongings, and drove toward California.

During the drive they fabricated a story to tell authorities if they were caught. According to McDonald, the story included telling police that he, not Bassett, had drowned Austin. The next morning they stopped in Grants Pass,

Oregon, where, without Bassett's knowledge, McDonald went to the police.

## B. Instructions and Verdict

The court instructed the jury that in order to find McDonald guilty of murder, either his acts, or the acts of a person to whom he was an accomplice, must have been a proximate cause of the Bassetts' deaths. The jury found McDonald guilty of second degree murder for the deaths of Michael and Austin Bassett. They found him not guilty of the murder of Wendy Bassett.

## IV
### APPEAL

On appeal McDonald argues that: (1) the trial court erred in finding Bassett's hearsay statements unreliable; (2) accomplice liability was erroneously included in the proximate cause instruction; (3) his acts were not the proximate cause of Michael's death, because Michael would have died anyway from the shots fired by Bassett; and (4) defense counsel was ineffective in failing to offer at trial Bassett's booking mumblings.

## ANALYSIS
### I
#### CULPABILITY - INSTRUCTION 18

Jury instruction 18 reads in part:

> To constitute murder, there must be a causal connection between the death of a human being and the criminal conduct of a defendant or a person to whom a defendant acts as an accomplice so that the act done was a proximate cause of the resulting death.

> The term "proximate cause" means a cause ·which, in a direct sequence, unbroken by any new independent cause, produces the death, and *without which the death would not have happened.*

There may be more than one proximate cause of death.

If you are satisfied beyond a reasonable doubt that the acts of the defendant *or a person to whom he acted as an accomplice*, were a proximate cause of the death . . . .

(Emphasis added.) Following this instruction, the jury could find either that McDonald's gunshot was one of multiple proximate causes of Michael's death or that McDonald acted as an accomplice to Bassett, whose gunshots were a proximate cause of Michael's death.

## A. Accomplice Liability

McDonald argues that Instruction 18 erroneously incorporates accomplice liability into the definition of proximate cause and does not conform to the WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL.[2] He contends the instruction relieved the State of the burden of proving that McDonald's actions proximately caused Michael's death by allowing Bassett's actions, as principal, to be the proximate cause of Michael's death, with McDonald culpable as a nonactor accomplice.

■ But the State did not need to prove McDonald's actions alone were the proximate cause of Michael's death in order to convict McDonald. A defendant can be convicted of a charged crime if he acts merely as an accomplice:

(1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.

(2) A person is legally accountable for the conduct of another person when:

. . . .

(c) He is an accomplice of such other person in the commission of the crime.

---

[2]WPIC 25.02 is identical, except for the accomplice portion. Specifically, WPIC 25.02 states, in part: "To constitute [murder] . . . there must be a *causal connection* between the death of a human being and the criminal conduct of a defendant so that the act [done] . . . was a proximate cause of the resulting death." (Emphasis added.)

RCW 9A.08.020. The law holds an accomplice equally culpable as the principal, regardless of which one actually performed the harmful act. *See State v. Silva-Baltazar,* 125 Wn.2d 472, 886 P.2d 138 (1994). All that is required is that the accomplice has encouraged, rendered assistance, or aided in the planning or commission of the crime. RCW 9A.08.020.

■ ■ The elements of an offense remain the same whether the accused is charged as a principal or an accomplice. RCW 9A.08.020; *State v. Gamboa,* 38 Wn. App. 409, 413-14, 685 P.2d 643 (1984). Accordingly, the facts support McDonald's conviction for Michael's murder as an accomplice to Bassett, who also fired a fatal shot and with whom McDonald was acting in concert. Instruction 18 did not relieve the State of any evidentiary burden.

McDonald further argues that the jury could not have found him to have been Bassett's accomplice because it acquitted McDonald of Wendy Bassett's death. This argument is not persuasive, because Bassett fatally shot Wendy Bassett before McDonald entered the home. Thus the jury could have found insufficient evidence of McDonald's assistance in her murder or its planning.

In contrast, McDonald took a more active role in the death of Michael by shooting him in the head, intending to put him "out of his misery." Thus, the jury reasonably could have determined that McDonald was an accomplice to the murder of Michael but not Wendy. Moreover, McDonald himself requested a "to convict" instruction, which similarly included McDonald in the alternative roles of principal and accomplice.[3]

---

[3]For example, Instruction 5, which mirrors an instruction McDonald proposed, reads in part:

> To convict . . . McDonald, of the crime of Premeditated Murder . . . of Michael Bassett, each of the following elements must be proved beyond a reasonable doubt:
>
> (1) That . . . the defendant *or a person to whom the defendant acted as an accomplice,* did cause the death of Michael Bassett;

 We find no error in instruction 18.[4]

## B. Proximate Cause

McDonald contends that his actions could not, as a matter of law, have been the proximate cause of Michael Bassett's death because Michael would have died from fatal gunshot wounds already inflicted by Brian Bassett, even if McDonald had not also fatally shot Michael in the head.

 There are two elements of proximate cause: factual causation and legal causation. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985).

### 1. Cause in Fact

"[A]s to cause in fact, tort and criminal situations are exactly alike." *State v. Dennison*, 115 Wn.2d 609, 624 n.15, 801 P.2d 193 (1990) (citing WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.12, at 397 n.31 (1986)). Instruction 18's definition of proximate cause, taken from WPI 15.01 and WPIC 25.02, addresses cause in fact. *Hartley*, 103 Wn.2d at 777.

There are several tests for factual causation. Most common is the "but for" test; another is the "substantial factor" test. *See, e.g., Allison v. Housing Auth.*, 118 Wn.2d 79,

. . . .

(4) That the death of Michael Bassett was a result of acts of the defendant *or a person to whom the defendant acted as an accomplice* . . . .

(Emphasis added.) Instruction 11, which is substantially the same as an instruction proposed by McDonald, defines accomplice liability, including "all assistance whether given by words, acts, encouragement, support, or presence."

[4]Even if there were error, as McDonald contends, it was harmless. "Jury instructions must be considered in their entirety to determine if there is reversible error in a specific instruction." *State v. Schulze*, 116 Wn.2d 154, 167, 804 P.2d 566 (1991). An error is harmless if it is trivial, formal, merely academic, did not prejudice the rights of the party assigning it, and did not affect the outcome of the case. *State v. Stewart*, 35 Wn. App. 552, 555, 667 P.2d 1139 (1983) (citing *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977)).

Instruction 18 did not introduce the option of accomplice liability. Separate instructions on accomplice liability, including number 5 proposed by McDonald, instructed the jury that they could convict McDonald of the crimes if he acted either individually or as an accomplice. McDonald did not challenge the other instructions.

821 P.2d 34 (1991).[5] Had McDonald not fired, Michael still would have died from the shots fired by Bassett. But it does not necessarily follow that McDonald's actions cannot be a proximate of Michael's death. We are not persuaded that the law or instruction 18 is limited to McDonald's "but for" definition of proximate cause.

a. *Substantial Factor Test*

One instance in which the substantial factor test applies is "where either one of two causes would have produced the identical harm, thus making it impossible for plaintiff to prove the 'but for' test." *Daugert v. Pappas*, 104 Wn.2d 254, 262, 704 P.2d 600 (1985) (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41 (5th ed. 1984)). "The 'substantial factor' test is generally applied in the multiple causation cases." *Allison*, 118 Wn.2d at 94 (citations omitted).

Under the substantial factor test, all parties whose actions contributed to the outcome are held liable:

> If two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test [than "but for"] is needed. . . . A stabs C with a knife, and B fractures C's skull with a rock; either wound would be fatal, and C dies from the effects of both . . . . In such cases it is quite clear that each cause has in fact played so important a part in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all.

W. PAGE KEETON, at 266-67 (footnotes omitted).

Here, Michael would have died from the shots inflicted by Bassett. But Michael was still breathing when McDonald shot him again in the head. The shot fired by McDonald could also have alone been fatal. Like the example cited

---

[5]In *Allison* the Supreme Court reversed the Court of Appeals' "but for" standard of causation in favor of the "substantial factor" test in an employment discrimination case.

above, Michael died from the effects of all the wounds. We reject McDonald's argument that his shot did not cause Michael's death simply because Bassett also fired a fatal shot. Under the "substantial factor" test, McDonald's shot was a proximate cause of Michael's death.

b. *Hastening or Contributing to Death*

The "substantial factor" test supplants the "but for" test in criminal cases involving multiple causes; it is analogous to the "hastening of death" doctrine, well-settled in other jurisdictions.

> The principle is firmly established that an accused is criminally liable for homicide if the deceased was suffering from a prior injury and the act of the accused contributed to or accelerated his death, as where an accused inflicted an additional wound which hastened the death of one already mortally wounded.

*United States v. Kinder*, 14 C.M.R. 742, 767 (A.F.B.R., 1954) (citations omitted).

Similarly in *People v. Cox*, 123 Colo. 179, 228 P.2d 163 (1951), intoxicated driver Cox struck decedent Mead, who was lying in the road following a collision between his car and a large truck. Despite having been thrown from his car during the first collision, investigators determined that Mead was still alive before being struck by Cox. The trial court directed the jury to return a verdict of not guilty because the injuries Mead sustained in the first collision might have been fatal, and it was therefore speculative whether Cox's actions caused Mead's death.

The Colorado Supreme Court reversed, stating:

> It may be, as declared by the trial court, equally possible that Mead was fatally injured in the first accident rather than as a result of being struck by defendant's car. If so, that alone does not absolve defendant. I may not wantonly attack a dying man, and if thereby I hasten or contribute to his death, it is no defense that he would have died in any event.

*Cox*, 123 Colo. at 181.[6]

Here, Michael Bassett continued breathing after being shot by both Bassett and McDonald. Although either shot alone would have been fatal, both shots contributed to Michael's death. McDonald's shot occurring last, could only have hastened death, as McDonald intended.[7] The shot fired by McDonald was a cause "in fact" of Michael Bassett's death.

---

[6]See also the following other "hastening or contributing to death" cases cited in *Cox*:

In *State v. Smith*, 73 Iowa 32, 34 N.W. [597, 601 (1887)] . . . "It surely ought not to be the law that because a person is afflicted with a mortal malady, from which he must soon die, whether his ailment be caused by natural or artificial causes, another may be excused for acts of violence which hasten or contribute to or cause death sooner than it would otherwise occur". . . .

In *Duque v. State*, 56 Tex. [Crim]. 214, 119 S.W. 687 [(1909)] . . . "if defendant contributed to bringing about or hastening death he would be guilty of homicide regardless of whether the first assault ultimately might have caused death."

In *State v. Weston*, 155 Ore. 556, 64 P. (2d) 536, [545, 108 A.L.R. 1402 (1937)] . . . . "It may be that Loll was mortally wounded by Fiedler; nevertheless, the defendant was guilty of the crime charged in the indictment if the effects of his shot hastened Loll's death". . . . In *State v. BeBee*, 113 Utah 399, 195 P. (2d) 746, [747 (1948)] . . . . "As long as there is life in a human being the extinguishment of it may be homicide. Where it cannot be determined which of the wounds received by a decedent caused or contributed to his death it becomes a question of fact for a jury to determine."

In *State v. Francis*, 152 S. C. 17, 149 S.E. 348, 364, [73 A.L.R. 1133 (1934)] . . . . "But though a human body must be alive in order that it may be the subject of homicide, yet the quantity of vitality which it retains at the moment the fatal blow is given, and the length of time life would otherwise have continued, are immaterial considerations. If any life at all is left in the human body, even the least spark, the extinguishment of it is as much homicide as the killing of the most vital being."

(Emphasis omitted.) *Cox*, 123 Colo. at 182-83.

[7]The *Cox* court recognized the evidence did not necessarily establish that Cox "hastened" Mead's death. Rather, it determined that such a hastening of death was inevitable and could be assumed:

True, there is no expert testimony here as to which of the many injuries were then received and none that such injuries actually did contribute to or hasten death, but we think the blow was such as not to require expert testimony to that end. That those effects are the natural and inevitable consequences of such a blow as was inflicted by defendant's automobile is a matter of common knowledge.

*Cox*, 123 Colo. at 184.

## 2. Legal Cause

The second element of proximate cause, legal causation,

> rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability should attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on "mixed considerations of logic, common sense, justice, policy, and precedent."

*Hartley*, 103 Wn.2d at 779 (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974) (additional citations omitted)). When cause in fact is shown, civil courts have generally found sufficient legal cause in circumstances such as here. *See also State v. Yates*, 64 Wn. App. 345, 824 P.2d 519 (1992), in which we upheld a murder conviction where the victim was removed from life support following an otherwise fatal stab wound to the head.[8]

Under the *Hartley* test, McDonald should not escape culpability simply because Bassett's gunshot also contributed to Michael's death. The shots fired by Bassett were not immediately fatal; Michael was still breathing when McDonald fired the second fatal shot. It would be absurd to absolve multiple assassins of guilt, simply because death cannot be attributed to a single individual's actions.[9]

We hold McDonald criminally culpable for the murder of Michael Bassett, whether as an accomplice to Brian Bassett or as an active participant who fired the second fatal shot.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

---

[8]"When life support is removed, the cause of death is not the removal, but whatever agency generated the need for life support in the first instance." *Yates*, 64 Wn. App. at 351 (citing *In re Guardianship of Grant*, 109 Wn.2d 545, 564, 747 P.2d 445, 757 P.2d 534 (1987)).

[9]If such were the law, an aspiring killer could, for example, summon a gang to fire shots simultaneously into the victim's head at close range, then argue that no one was guilty of murder.

BRIDGEWATER, A.C.J., and SEINFELD, J., concur.

Review granted at 136 Wn.2d 1019 (1998).